M. Marvin Berger, J.
Euclidean mathematics contains a number of general postulates — statements which are admitted to he true without the need for proof, such as is required to demonstrate the validity of a theorem.
*384 Among such, postulates is one frequently referred to as the postulate of equality. It states: “ Things which are equal to the same thing or to equal things are equal to each other.”
Another postulate is the substitution postulate — “In any mathematical operation any thing may be substituted in the place of its equal.” (Geometry for the Practical Man, by J. E. Thompson, 3d ed. New York, 1962.)
These formulas are not limited to mathematics. Their self-evident logic is applicable to other fields of knowledge — law, for example.
The defendant in this case in effect asks the court to disregard the postulates of equality and substitution and to hold that the People have failed to connect the defendant with the crimes charged against him.
The defendant is accused of criminal sale of a controlled substance in the fifth degree, marijuana (Penal Law, § 220.34) and of criminal possession of the same controlled substance in the seventh degree (Penal Law, § 220.03).
On December 4, 1973, Special Officer iCamhi, an employee of the Board of Education, witnessed the defendant handing a small brown manila envelope to an unknown person in a corridor of the Forest Hills High School. The defendant was seen to receive simultaneously a quantity of currency. Officer Camhi left his place of concealment, whereupon the putative purchaser dropped the envelope. Camhi picked it up and pursued the defendant. On arrest, the defendant was searched and found to be in possession of two of the envelopes containing the same quantity of marijuana found in the first envelope.
An arresting officer summoned to the scene testified that he presented the three envelopes for analysis to the police laboratory. The laboratory found marijuana present ¡and sealed the 'contents of the envelopes in three separate transparent compartments in a plastic envelope, in which were also placed the three brown envelopes and the laboratory report.
Defendant moves to dismiss the complaint on the ground that the People’s witnesses failed to identify the specific envelope which was the subject of the alleged sale and the two envelopes which the defendant was charged with possessing criminally.
He asserts that the articles must be identified as the articles they purport to be and must be shown to be connected with the crime or the accused (22A C. J. S., Criminal Law, § 709, pp. 946, 949).
Furthermore, the inability of People’s witnesses to identify the specific packet which is the subject of the alleged sale, *385 deprives him of the privilege of pretrial discovery or inspection, since subdivision 3 of CPL 240.20 requires the defendant to “ specifically designate ” the item sought to be discovered and inspected.
The inability of the People’s witnesses to identify precisely the envelope which was the subject of the alleged sale might compel dismissal, if its contents differed from the contents of the other two envelopes, either as to the nature of the substance or where weight of the contents had a significant bearing on the degree of the crime.
But neither of these considerations is involved here.
According to Wigmore’s Evidence .(3d ed., § 152) in a discussion of the admissibility of stolen property, “ The possession of goods of the same hind as the general class of goods from which the taking was done is receivable, even though the specific quantity or any quantity of the general mass cannot be identified or discovered or shown to be missing.”
A footnote cites Regina v. Burton (Dears. C. C. 282 [1854]). In that case, defendant was arrested as he emerged from a warehouse with pepper in his pockets of a sort similar to that stored in the warehouse, but it could not be proven that any pepper was missing. The pepper found on defendant was admitted in evidence., accompanied by a comment by Justice Maule, stating (p. 284) : “If a man go into the London Docks, sober without means of getting drunk, and comes out of one of the cellars, very drunk wherein are a million gallons of wine, I think that would be reasonable evidence that he had stolen some of the wine in that cellar though you could not prove that any wine was stolen or any wine was missed.”
In People v. Levia (3 A D 2d 42 [3d Dept.]) it was sought to recover penalties for violation of the Conservation Law on the ground that the defendants concertedly caught fish during a closed season. Reversing the trial court’s dismissal at the end of the People’s case, the appellate court, in a Per •Curiam opinion, wrote (pp. 43-44): “ Of course witnesses could not positively identify the three fish as the same they had seen caught, but the connection was so close .as to render the exhibit competent evidence. The absence of direct and positive proof went to the weight, not to the competency. (People v. Neufeld, 165 N. Y. 43, 47; People v. Bonier, 189 N. Y. 108.) ”
In People v. Sands (46 Misc 2d 981 [App. Term, 1st Dept.]), the arresting' officer observed four men enter the defendant’s stationery-candy store, hand him money and slips of paper and then leave without making a purchase. After each such trans *386 action the defendant would walk to an ice cream freezer in the rear of the store and place the slip in the freezer. The officer, bearing a search warrant, removed from the freezer an envelope with 5St slips, noting'185 plays of mutuel race horse policy. The appellant contended that his possession had not been conclusively demonstrated.
Mr. Justice Timer, writing for the majority (Capozzoli, J. dissenting), held that the crime of possession “ does not mandate a higher degree of proof ” than proof beyond a reasonable doubt. He wrote (p. 982): “ Where the possession- charged is a constructive one, the standard of proof does not vary. True the means of establishing the fact are different. But where circumstantial evidence is to be utilized, the burden is not increased so that proof must establish to an absolute certainty the defendant’s ‘ possession ’. The facts from which the defendant’s possession is inferred must be convincing, they must point directly to the guilt of the accused.
“ In the case of the defendant-appellant Sands the reasonable and logical inference to be drawn from the evidence is that the envelope which the officer removed from the freezer was the repository for the slips which the officer had seen the defendant place in the freezer.
1 ‘ In making a deduction that the circumstances point to the accused and exclude any hypothesis but that of his guilt, we are engaging in an affair of reason. We are not compelled to consider remote possibilities and reach an absurd result. To conclude on the facts before us that the envelope containing 52 slips and some 185 policy plays was put in the freezer by one of the customers would fly in the face' of common sense and would be morally wrong. ’ ’
In State v. Hults (9 Wash. App. 297), the defendant was charged with unlawful possession of marijuana. The State appealed from dismissal of the information at the conclusion of the State’s case. One of the assignments of error was the exclusion by the trial court of 29 kilo packages of marijuana found in a box containing 33 such packages and 5 packages taken from a duffel bag holding 7 kilos. Random samples taken from 4 packages were tested’, found to contain marijuana and were admitted. The following language is found in the majority opinion (Petrie, J., p. 303):
‘ ‘ The court ruled that the quantity admitted was far in excess of the minimum needed to prove possession with intent to sell, and that the defendant would be unduly prejudiced by *387 the admission of the additional kilos. The state contends that all items in these exhibits should have been admitted because it was reasonable to infer that all packages (similar in appearance and randomly selected) contained the same substance as those already tested.
“ Evidence material to any issue, if under no excluding disability, is admissible. Any competent evidence tending logically to prove the commission of a crime or the defendant’s connection with it, is deemed material to the state’s case. (State v. Gersvold, 66 Wn. 2d 900.) Relevancy — the logical proof tendency toward a fact — is furnished when competent evidence establishes that the sample, randomly selected from among similar items, identifies the fact. Materiality is established when proof of that fact is a material issue in the case. Admissibility follows unless the evidence is under some excluding disability. ’ ’
Unquestionably, where physical evidence is available and identifiable, it should be produced. However, positive identification is not always necessary. In fact, physical evidence is by no means indispensable. As stated by my learned colleague, Judge Eugene R. Canudo in People v. Fonville (72 Misc 2d 785, 787-788): “ the nature, appearance and condition of mere physical objects may be proved by parol without offering the objects themselves in evidence or accounting for their absence (22 C. J., Evidence, § 1225, p. 980; 32A, C.J.S., Evidence, § 782). This being the ease, it would not matter whether a nonproduced and unaccounted for physical object happens to be supermarket meat, whiskey, narcotics or a wooden jewelry box. If the prosecutor is able to convince the trier of the facts that the charges are well founded and can then establish the guilt of the accused beyond a reasonable doubt without producing the physical evidence, he may still succeed. ’ ’
In summary, the contents of all three envelopes meet the requirements governing admissibility of real evidence stated in 1 Bender’s New York Evidence, page 806 — they are relevant to the issue and they are substantially in the same condition in material respects as at the time or event to which they relate. As to the remaining requirement, that of identification, logic as embodied in the postulates of identity and substitution, satisfies that test and compels admissibility of the exhibits.
The motion to dismiss is denied. The defendant is held for the grand jury.