Andrew G. Celli, J.
The defendant pled guilty on July 19, 1974 to a charge of criminal sale of a controlled substance in the third degree. The guilty plea was in satisfaction of two indictments, one of which alleged conduct occurring after September 1, 1973 the effective date of the new drug law. The defendant is thus directly and immediately subject to the sentencing provisions of the new law, under which the said offense is designated an A-III felony. (Penal Law, § 220.39, subd. 1.) The following conditions describe his circumstance: 1. Mandatory maximum term of life imprisonment. (Penal Law, § 70.00, subd. 2, par. [a].) 2. Mandatory minimum term of from one to eight and one-third years. (Penal Law, § 70.00, subd. 3, par. [a], cl. [iii].) 3. No possibility of probation, conditional discharge, or unconditional discharge. (Penal Law, § 60.05, subd. 1.) 4. Lifetime parole (Penal Law, § 70.40, subd. 1) assuming, the defendant succeeds in being released from prison. 5. No possibility of civil commitment to the Drug Abuse Control Commission, despite a finding of addiction. (Mental Hygiene Law, § 81.25, subd. [a], par. 3.) 6. No possibility of youthful offender treatment. (CPL 720.10, subd. 2.) 7. No possibility of having the charge reduced through plea bargaining. (CPL 220.10, subd. 6, par. [a].)
This matter comes before the court on motion of the defendant to declare section 70.00 (subd. 2, par. [a] ; subd. 3, par. [a], els. [i], [ii], [iii]) of the Penal Law unconstitutional as violation of the Eighth Amendment prohibition of cruel and unusual punishment and on other grounds.
The prohibition against cruel and unusual punishment was incorporated into the United States Constitution as a part of the Eighth Amendment in 1791. The phrase had found its way into the English Bill of Rights in 1688, into the Virginia Declaration of Rights in 1776, and into James Madison’s proposed constitutional amendments in 1789. (33 ALR 3d 349.) After 1791 almost every State constitution, including New York’s, adopted identical or similar prohibitions. While many questions have been raised as to the intended meaning, and many remain, certain questions have been settled by clear precedent. Thus, it is clear that the prohibition is a dynamic concept to be continually evaluated and re-evaluated in light of a continually changing society. We are not to ask ourselves what was cruel and unusual in 1791, but what is cruel and unusual today. *738 (Weems v. United States, 217 U. S. 349.) As stated in Goss v. Bomar (337 F. 2d 341, 343) “ The Amendment must draw its meaning from the evolving standards of decency that mark the . progress of a maturing society. ’ ’
Secondly, it has been settled that the humane and necessary stricture of the Eighth Amendment is not directed solely against the method, manner, or nature of punishment, but also against the length, severity and proportionality of the punishment to the offense in question. This rule was first given the highest force of law in Weems v. United States (217 U. S. 349, supra). In that case the Supreme Court held unconstitutional as cruel and unusual a mandatory minimum term of 12 years’ imprisonment in chains at hard and painful labor for the offense of making false entries in government cash books. “It is a precept of justice ”, said the court (p. 367) “ that punishment for crime should be graduated and proportioned to offense.” The court also noted that less severe punishments were prescribed in other jurisdictions for similar crimes and even for more serious crimes. The same rule of proportionality was recognized in Furman v. Georgia (408 U. S. 238, rehearing den. 409 U. S. 902) and in numerous cases of other jurisdictions, a few of which will be discussed presently.
Thirdly, the court notes that it can no longer be questioned that the Eighth Amendment’s ban on cruel and unusual punishment is applied to the States through the Fourteenth Amendment. This was made clear in Robinson v. California (370 U. S. 660).
The court’s attention has been directed to the broad, penetrating pronouncement of the Supreme Court of California in Matter of Lynch (8 Cal. 3d 410). The court there, in declaring cruel and unusual a mandatory life term for a second offense of indecent exposure, isolated severe tests to be employed in determining whether a punishment is cruel and unusual. They are: (1) whether the punishment fits the offense and the offender, keeping in mind the danger to society and the penological purpose of rehabilitation; (2) comparison of the challenged,punishment with punishment prescribed in the same jurisdiction for more serious offenses; and (3) comparison of the challenged punishment with that prescribed for the same offense in other jurisdictions. The court notes that similar tests were applied in Hart v. Coiner (483 F. 2d 136) holding a mandatory life sentence under the recidivism statute for a bad check offense to be unconstitutional as cruel and unusual.
*739 The court believes on the basis of the Lynch case, the Weems case, and other cases that the constitutionality of a sentence may be measured by means of the following tests: (1) nature of the offense [taking into consideration the violent or nonviolent nature of the crime, the aggravated or nonaggravated nature of the particular circumstances of the case, the degree of dangerousness of the crime to society; (2) the nature of the offender; (3) the punishment compared with punishment for other offenses in the same jurisdiction; (4) the punishment compared with the punishment for the same offense in other jurisdictions; (5) the recommendations of model legislation; and (6) the conscience of the court.
Before considering these factors which the court believes relevant, it would be important to mention what the court believes to be irrelevant: the possibility of parole. The court will not sit idly by and justify an unconstitutional deprivation of rights on the ground that an administrative agency may later come along and correct or reduce the injustice. The sentence imposed on every defendant must pass constitutional scrutiny. The court notes that lifetime parole may itself constitute cruel and unusual punishment. (Weems v. United States, supra, p. 366.)
(1) Nature of the offense. The court notes at the outset that sale of a drug is not a violent act. The sale itself does not present a danger to the user or to society. But lest this application of the test to the sale be considered too narrow and myopic, the court notes that even the use may not present the danger to users and to society which is popularly imagined. Voluminous material has been submitted which at the very least raises a serious doubt in the court’s mind as to the inherent danger of the opiates.
It is almost ironic that circumstances of the individual case ¡should be one of the measures used, since that is a matter purportedly removed from consideration of the court by the statute. The court is not permitted to take into consideration the quantity of narcotic sold: whether a single fix, a thousand bags or a million dollar shipment. Life imprisonment is required. This court is not allowed to consider the nature of the transaction: whether a sale for money, an exchange, gift or unaccepted offer. Life imprisonment. Nor can the court consider the relationship of the parties: whether spouse, friend or stranger; nor the motivation of sale: whether for profit or humanitarian gesture of helping a sick friend; nor the seller’s *740 status in the narcotic distribution system: whether importer, kilo connection, ounce man, street dealer, pusher, or nonseller passing a needle. Life imprisonment is required in all cases, and in all cases the law thus presumes the worst.
(2) Nature of offender. It is a fundamental precept of our system of justice that the punishment should not only fit the offense, but the offender. Our system of separation of powers demands that this should be so. Moreover, rehabilitation has been recognized as the major objective of criminal punishment. (Williams v. New York, 337 U. S. 241; People v. Oliver, 1 N Y 2d 152.) In the latter case the court noted that (p. 160) “ there is no place in the scheme for punishment for its own sake, the product simply of vengeance or retribution ”, Again, however, with the law before the court, no allowance for this fundamental precept is made. The court is not allowed to consider the status of the buyer, whether addict or nonaddict. Nor may it consider the qualities of the offender, whether young or old, family man or not, high or low rehabilitative potential, value or potential value to society. In all cases there is a mandatory maximum of life imprisonment.
(3) Other crimes in the jurisdiction. The sale of narcotics is punished more severely and inflexibly than any other offense in the State, of New York.
Aside from drug offenses, only arson in the first degree [causing explosion in occupied building] (Penal Law, § 150.20); kidnapping in the first degree (Penal Law, § 135.25); murder (Penal Law, § 125.25); and attempted murder of a peace officer (Penal Law, § 110.05, subd. 1); carry mandatory life terms. Of all the Class A felonies, only the narcotics possession and sale offenses are prohibited from being reduced by plea bargaining below the A-III level (CPL 220.10, subd. 6, par. [a]); which still carries a mandatory life maximum, and only those convicted of narcotics possession and sale offenses are barred from being absolutely discharged from their sentences after five years of unrevoked parole. (Correction Law, § 212, subd. 8.)
Not even a persistent [third] felony offender is subject to a mandatory life sentence. Such a s'entence may be imposed only if the court decides that it is necessary for the public interest because of the history and character of the defendant and the nature and circumstances of his criminal conduct, and the court must state in the record its reasons for these conclusions. (Penal Law, § 70.10, subd. 2.)
The next lower felony classification [Class B] which carries a discretionary maximum of 25 years and no mandatory mini *741 mum (Penal Law, § 70.00) embraces arson in the second degree [causing fire in occupied building] (Penal Law, § 150.15); bribery in the first degree (Penal Law, § 200.04); bribe receiving in the first degree (Penal Law, § 200.12); burglary in the first degree (Penal Law, § 140.30); conspiracy in the first degree (Penal Law, § 105.15); criminal mischief in the first degree (Penal Law, § 145.12); kidnapping in the second degree (Penal Law, § 135.20); manslaughter in the first degree (Penal Law, § 125.20); rape in the first degree (Penal Law, § 130.35); robbery in the first degree (Penal Law, § 160.15); sodomy in the first degree (Penal Law, § 130.50); and possession of explosives with intent to use unlawfully against the person or property of another (Penal Law, § 265.05, subd. 7).
Indeed, a person can commit any number of Class B felonies (or nondrug Class A felonies to which Class B felony pleas are received), and yet be sentenced to a maximum of only 30 years’ imprisonment if the series of crimes was committed prior to the time the person was imprisoned under any of the sentences arising out of ¡those crimes (Penal Law, § 70.30, subd. 1, par. [c]).
Thus, a person who kills intentionally, who causes serious physical injury in the course of a robbery, who rapes a child, who blows up an occupied building, faces a maximum term of 25 years, or a maximum of 30 years for a series of such acts before being imprisoned on any one of them. Although imprisonment is mandatory, no minimum term may be imposed (and life imprisonment may not be imposed for a third felony offender) unless the court gives reasons for concluding that the best interest of the public requires it because of the nature and circumstances of the crime and of the history and character of the defendant. Such a person will not remain on parole for the rest of his life, nor will he be denied the opportunity to engage in plea bargaining — the traditional means by which the courts mitigate the punishment required by the Legislature for a crime when the circumstances of the particular case and the interest of justice require it.
None of this applies to the narcotics “ seller ”. Whether he sells a bag of heroin for profit or to support his own addiction, or whether he gives away a “fix” to a desperately sick friend suffering from withdrawal pains (where the consequences to the ‘ ‘ victim ’ ’ and to society are minimal, by any scale of values), the mandatory maximum penalty of life remains the same. He must be punished much more severely than the armed robber who shoots his victim and the multiple rapist. He must *742 be punished as severely as the most heinous murderers, kidnappers, and arsonists, and more severely than many of them. He is even denied the privileges accorded to all other criminal defendants, including multiple and persistent felony offenders, of plea bargaining and of judicial discretion in setting the maximum term in accordance with the nature and circumstances of the particular criminal conduct involved and with the history and character of the defendant.
In the opinion of the court, no view of the dangerousness of narcotics to persons or society can justify such disproportionate punishment.
(4) Same crime in other jurisdictions. It is natural, logical and necessary in deciding whether a statute is violative of the Eighth Amendment, to compare the punishment which it prescribes with the punishment prescribed for the same offense elsewhere in the country. One word describes our law: the toughest. Thirteen States: Alaska, Connecticut, Georgia, Hawaii, Iowa, Kansas, Kentucky, Massachusetts, North Carolina, North Dakota, Oregon, South Dakota, Washington, authorize a maximum of 10 years. Eight States: Alabama, Idaho, Minnesota, South Carolina, Tennessee, Utah, West Virginia, Wisconsin and the Federal Government authorize a maximum of 15 years. Twelve States: Colorado, Indiana, Maine, Maryland, Michigan, Nebraska, Nevada, New Hampshire, Oklahoma, Pennsylvania, Rhode Island, Wyoming, authorize a maximum of 20 years. Three States: Arkansas, Florida, Vermont, authorize five years, and the District of Columbia limits the penalty to one year. Five States: Arizona, Illinois, Missouri, Montana and Texas, authorize life terms but do not require them. Five other States authorize but do not require maximum terms varying from 25 to 50 years. Only California and Louisiana have mandatory life terms for the sale of narcotics but neither State has accompanying provisions as severe as New York’s. Thus,, for example, the California statute does not contemplate lifetime parole nor disallow plea bargaining. And Louisiana permits participation in a rehabilitation program, discharge from probation after one year, and other benefits.
It seems incomprehensible to the court that a man involved in the sale'of narcotics at the four corners in Rochester, may be prosecuted in Federal court, one block to the north, and may under Federal law receive a probationary sentence (U. S. Code, tit. 21, §§ 841-843, § 849) but if he is prosecuted in this court, *743 one block to the south, he must receive a mandatory maximum of life imprisonment.
(5) Model legislation. All major and respected model legislation and reports condemn life imprisonment. Among these groups are the Model Penal Code of the American Law Institute (1962) , the Model Sentencing Act of the Advisory Council of Judges of the National Council on Crime and Delinquency (1963) . Five-year máximums and avoidance of long maximum terms are recommended. (Model Sentencing Act, § 9; Model Penal Code, § 6.06.) Lengthy terms are reserved for those who have committed particularly heinous crimes. (President’s Task Force on the (Courts [off. ed.], p. 180.) The possibility of discharge from parole is also recommended. (Model Penal Code, § 305.12.)
(6) Conscience of the court. There is one test the court deems more important than the others: the conscience of the court. It is a tribute to our system that the more fundamental a question becomes, the more human and less legalistic becomes the source of answer. The court does not need precedent to comprehend the effect upon a defendant of a life sentence. The court must react as a man as well as a jurist. This life sentence provision is a statute without mercy. It is a statute without the possibility of mercy. It is without compassion. It is vindictiveness retribution. It offends the conscience of the court and beyond reasonable doubt the principles inherent in our Constitution. The court cannot and will not suffer the quality of mercy to be strained. It cannot permit the Legislature to repeal compassion. Conscience must stand. The statute must fall.
The court has measured the statute by all approved tests and has found it wanting. Accordingly, it is the judgment of this court that section 70.00 (subd. 2, par. [a]) of the Penal Law, imposing a mandatory sentence of life imprisonment upon a person convicted of an A-III felony, is unconstitutional as violative of the Eighth Amendment to the United States Constitution and section 5 of article I of the New York State Constitution. Having so concluded, the court need not reach the question of whether the statute violates the defendant’s right to equal protection of the laws.
Since the court has found that the classification for the crime of selling a narcotic drug is unconstitutional and violates the United States and New York State Constitutions, the question then remains what constitutional punishment should be imposed? The present law was enacted and became effective September 1, *744 1973. By reason of this decision the court reinstitutes the law prior to that time and reclassifies the crime as a class 0 felony. The defendant, following completion of his presentence investigation, will be sentenced thereunder.