Joseph D. Quinn, Jr., J.
Defendant has been indicted on two counts of criminal sale of a controlled substance in the third degree, in violation of subdivision 1 of section 220.39 of the Penal Law, and on two counts of criminal possession of a controlled substance in the third degree, in violation of subdivision 1 of section 220.16 of the Penal Law. The indictment charges that the first two sale and possession offenses were committed on October 18, 1973 and that the second pair were committed on the 23d of October, 1973. It is claimed in that pleading that the narcotic drug involved in each instance was heroin. Under the revised drug laws which became effective on September 1, 1973 each of the crimes charged is classified as an A-III felony, punishable by an indeterminate term of imprisonment, the minimum period of which, for a first offender, is from one to eight and one-third years, and the maximum of which is life imprisonment.
Earlier in this action, defendant brought on an omnibus motion seeking varied relief. In the second branch of that application, he demanded dismissal of the indictment on constitutional grounds. In an order made on July 15, 1974 this court held determination of that branch in abeyance, directing, sua sponte, that the Attorney-General be first brought in under the provisions of section 71 of the Executive Law to defend the constitutionality of the several sections of the Penal Law and the Criminal Procedure Law which had come under attack. (Cf. People v. Gardner, N. Y. L. J., July 19, 1974, p. 14, col. 1.) In the interim, the Attorney-General has intervened, the constitutional questions presented here have been briefed and argued, and the remaining branches of the motion have been decided.
As has been indicated in fihe preliminary order entered in this action, defendant has assailed the validity of section 65.00 (subd. 1, par. [b]), subdivision 1 of section 220.16, and subdivision 1 of section 220.39 of the Penal Law and CPL 220.10 (subd. 6, par. [a]) as those sections apply to him, upon the grounds that they do violence to his due process and equal protection rights and that they are inconsistent with the prohibí *746 tion against cruel and unusual punishment under the Federal and New York Constitutions. In the briefs for defendant and on oral argument these claims were broadened to include a facial attack on the sections. This is of no great moment. The court will consider the issues relating to the constitutionality of the protested sections both facially and in their application to defendant.
In addresyng the task of passing upon the constitutionality of those areas of New York’s drug laws which were enacted in 1973 and which are challenged here, it is logical that defendant’s contention regarding the invalidity of subdivision 1 of section 220.16 and subdivision 1 of section 220.39 of the Penal Law be examined first.
Subdivision 1 of section 220.16 provides that “ [a] person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses * * * a narcotic drug with intent to sell it ”. This section and subdivision cover knowing and unlawful possession, with intent to sell, of any quantity of a narcotic or “ hard ” drug. The heroin referred to in the possession, as well as the sale counts of the indictment falls into the narcotic or “ hard ” drug category. (Cf. Penal Law, § 220.00, subds. 5, 7.) This same section grades the describéd offense as an A-III felony for punishment purposes.
In similar fashion, subdivision 1 of section 220.39 of the Penal Law prescribes that “ [a] person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells * * * a narcotic drug”. Like the first quoted section and subdivision, subdivision 1 of section 220.39 covers a sale of any quantity of a narcotic drug. And the gradation of the sale offense is also put at the A-III felony level.
In the statutory sentencing scheme, these A-III felonies, as has been previously indicated, generally carry with them an indeterminate prison term with a range of one year to eight and one-third years as a minimum and with a mandatory maximum of life (Penal Law, § 55.00; § 60.05, subd. 1; § 70.00, subd. 1; subd. 2, par. [a] ; subd. 3, par. [a], cl. [iii]) except where a lifetime probationary sentence may be imposed (Penal Law, § 65.00, subd. 1, par. [b] ; subd. 3, par. [a], cl. [ii]).
The gist of defendant’s cruel and unusual punishment claim is that the penalty which has been legislatively imposed and must be judicially imposed, if there is a conviction, is too harsh for the alleged crimes. He contends that when, in 1973, the Legisla *747 ture, in an effort to come to grips with the threat which the drug problem admittedly poses to society, incorporated such “ nonviolent ” sale and possession offenses, involving, as at bar, narcotic drugs in any quantity, regardless of the amount or value thereof, within the Class A felony scheme, and ranked them, insofar as mandatory maximum life imprisonment is concerned, with the most serious crimes known under New York Law, i.e., murder, attempted murder of a police officer, first degree kidnapping, and arson in the first degree, it exceeded its constitutional limitations and imposed a punishment which is excessive and disproportionate to the seriousness of the offenses to which it applies.
In this vein, defendant argues that, if he were to have been accused of the commission of any of such crimes of violence or threatened violence as second degree arson, first degree burglary, criminal mischief in the first degree, second degree kidnapping, manslaughter, or first degree rape, robbery or sodomy, he could expect to receive a maximum sentence of imprisonment of 25 years, if convicted.
By way of contrast, he says that none of “ [h]is alleged offenses involved violence or danger of violence towards persons or property.” He argues that the quantities of heroin involved here are minute [.006 and .007 ounces respectively] and that the entire amount of his gain from each of the transactions with which he is charged was $60.
He says that he is an indigent, uneducated “ [b]lack man who has known nothing but poverty all his life ” and that the illicit drug problem “ [i] s not the result of one man selling a minute quantity of heroin to another ”, but that “ [i]t is the result of a phenomenon which has evolved in this country involving many thousands of persons.” He concludes that there is no compelling reason or rational basis for the State to prescribe an indeterminate sentence of life imprisonment as punishment for any individual who stands accused as he does under the circumstances which obtain in his case, and to allow persons who are convicted of the rape or robbery type of offenses to receive more compassionate sentences.
Defendant suggests “ [t]hat the drug problem in no way compares to that of corruption of power in high political office ’ ’, and observes that “ [w]hen persons convicted of those crimes [of corruption of power] are sentenced it is sometimes for a few years and more often to even lesser terms in minimum security institutions, such as prison farms. More often yet * * * a suspended sentence is imposed.”
*748 In their briefs and on oral argument, defendant’s attorneys say that they do not “ [i]n any manner attempt to minimize what effect drug abuse has had on our society ” and that they do not “ [t]ake issue with * * * Governor [Rockefeller’s] or [the] Legislature’s perception of our society’s drug problems or with their right to approve [sic] legislation [which] they feel will solve those problems.”
Further, defense counsel say that they neither challenge “ [t]he system of indeterminate sentencing nor * * * [ask] that life sentences be found unconstitutional per se.” Nor do they fault the minimum sentence which defendant faces if convicted in this action.
Their chief complaint, rather, is with the comparative gravity ascribed .by the Legislature to the offenses charged here and with the severity of penalty fixed therefor.
It is well settled that the Eighth Amendment’s guarantee against cruel and unusual punishments is made applicable against the States through the due process clause of the Fourteenth Amendment of the United States Constitution. (Furman v. Georgia, 408 U. S. 238, 241, 309.) Moreover, “ [s]ince adoption of the Federal Constitution, similar proscriptions have been written into virtually every State Constitution, our own in 1846. (N. Y. Const. of 1846, art. I, § 5; see People ex rel. Kemmler v. Durston, 119 N. Y. 569, 576.) ” (People v. Davis, 33 N Y 2d 221, 225-226.)
In his concurring opinion in Furman v. Georgia (supra, p. 282) Mr. Justice Brennan spoke of the interrelated principles, which, when applied in combination, provide a means by which a court can determine whether a challenged punishment comports with the concept of human dignity which is the core of the Eighth Amendment. Formulating a cumulative test, he stated that “ [i]f a punishment is unusually severe, if there is a strong probability that it is inflicted arbitrarily, if it is substantially rejected by contemporary society, and if there is no reason to believe that it serves any penal purpose more effectively than some less severe punishment, then the continued infliction of that punishment violates the command of the Clause that the State may not inflict inhuman and uncivilized punishments upon those convicted of crimes.”
This court is of the view that, when subjected to this test, subdivision 1 of section 220.,16 and subdivision 1 of section 220.39 of the Penal Law ¡and the penalty provisions ¡which go with them pass Eighth Amendment muster.
*749 Firstly, the maximum sentence of life imprisonment which defendant will be confronted with, if convicted, is neither so inherently severe nor excessive as to violate the Eighth Amendment. Defendant concedes this. Nor is an indeterminate sentence inconsistent with the cruel and unusual punishments clause of that amendment. (Cf. People ex rel. Wilson v. Denno, 145 N. Y. S. 2d 175; People v. Wade, 266 Cal. App. 2d 918, cert. den. 395 U. S. 913.) Such a sentence affords an offender the opportunity to minimize his term of imprisonment by rehabilitating himself to the point that the parole board, in the exercise of discretion, permits him to serve a part of that term outside of the prison walls. (Correction Law, § 212; § 213.) In this regard, the fact that an offender sentenced under the penalty provisions attacked here must serve the minimum term imposed, before release on parole becomes a possibility, does not give rise to a valid Eighth Amendment claim. (Cf. United States v. Fiore, 467 F. 2d 86, cert. den. 410 U. S. 984.)
Secondly, the indeterminate sentence of imprisonment prescribed by statute for the A-III felonies of which defendant stands accused may not be said to have been imposed arbitrarily by thé Legislature within the meaning of the constitutional prohibition which comes into play here. For years, the evils of drug abuse and narcotics traffic have occasioned the grave concern of government. (Robinson v. California, 370 U. S. 660, 667-668.)
“ The 1973 revision of the drug laws * * * mirrors many of society’s current concerns and attitudes about the problems inherent in and created by drug abuse. Frustration with the seeming intractability of the drug problem is reflected in the hard line approach [taken by the Legislature] to the classification of drug crimes and to tougher and more restrictive sentencing options upon conviction.” (Hechtman Supplementary Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, art. 220, 1973-1974 Supplement, p. 6.)
The very drug crime classification and sentencing provisions which defendant so stridently objects to reflect no more than a legislative awareness that earlier and less stringent measures had failed to deter illicit drug traffic and the heinous crimes that it spawns. (Cf. Annual Message of the Governor, McKinney’s Session Laws of N. Y. [1973], vol. 2, pp. 2317-2322.)
The mere fact that, in beefing up the penalties for violation of the narcotics laws, the Legislature allowed more lenient sen *750 tences for offenses deemed by some to represent a greater evil, does not convert the penalties under fire in this case into cruel and inhuman punishments.
“ That for other offenses, which may be considered by most, if not all, of a more grievous character, less punishments have been inflicted does not make this sentence cruel. Undue leniency in one case does not transform a reasonable punishment in another case to a cruel one.” (Howard v. Fleming, 191 U. S. 126, 135-136.) “ The ¡comparative gravity of criminal offenses and whether their consequences are more or less injurious are matters for * * * [a State’s] determination.” (Pennsylvania v. Ashe, 302 U. S. 51, 55.)
Thirdly, the indeterminate sentence with its lifetime maximum for the drug sale and possession offenses with which defendant is charged cannot be fairly said to be unacceptable to modern, law-abiding society. In these populistic days, it would be difficult to find a better barometer of public sentiment than the elected Legislature which enacted the protested provisions.
The current attitude of the public in this respect is perhaps best expressed by the words spoken by Mr. Justice McQuillan of New York County in sentencing a convicted narcotics violator under the former law. “Nothing is more destructive to a community’s well being than widespread drug abuse. More young people in our city die from drug abuse than from any other single cause. Hard drugs are indeed a cancer to our community. Society has mounted a massive effort to blot out this destructive evil.” (People v. Junco, 43 A D 2d 266, 268.)
Lastly, the penalties prescribed are not so grossly disproportionate to the crimes charged as to shock the sense of justice. (Cf. Castle v. United States, 399 F. 2d 642, 652; Houle v. United States, 463 F. 2d 1137.) We are not, as defendant urges dealing with “nonviolent” offenses here. Realistically, we deal with but one phase of a large scale, well entrenched criminal activity that springs from human greed and preys on man’s weakness — one that turns buyers into sellers, makes addicts out of newborn infants and sets addicts to mugging, thievery, prostitution, robbery and murder to support an insatiable appetite. The punishment fits the crime. (Cf. Gallego v. United States, 276 F. 2d 914, 917-918.)
On oral argument and in a post-argument memorandum, defendant strenuously argued that the recent opinion of Judge Celli of the Monroe County Court in People v. Mosley (78 Misc 2d 736) is dispositive of the Eighth Amendment question presented here. The court has read Mosley, and, with all due respect *751 to the learned Jurist who wrote that decision, cannot bring itself to agree with the holding there.
There are two aspects of the Mosley decision, however, which invite comment.
The first is the point which Judge Celli makes to illustrate harshness of penalty, and, presumably, to demonstrate the existence of ¡due process and equal protection claims on the part of the defendant there. He found “ incomprehensible ” the fact that “ [a] man involved in the sale of narcotics at the four corners in Rochester, may be prosecuted in Federal court, one block to the north, and may under Federal law receive a probationary sentence (U. S. Code, tit. 21, §§ 841-843; § 849) but if he is prosecuted in * * * [the Monroe County] court, one block to the south, he must receive a mandatory maximum of life imprisonment.”
This argument was considered and rejected as untenable in Hutcherson v. United States (345 F. 2d 964, 967-970). What is more, under strict application of dual sovereignty standards, it would .seem that the United States Attorney could prosecute Mosley under the Federal statutes after New York authorities are through with him. [Cf. Rosenblatt, New York’s New Drug Laws and (Sentencing Statutes, p. 43, n. 2.)
The other point is that, in Mosley, where defendant had been convicted of criminally selling a controlled substance in the third degree, apparently upon a plea to one count in satisfaction of two indictments, the court there, after striking down the crime classification and sentencing provisions, revived the law extant prior to September 1, 1973 reclassified defendant’s crime from an A-III felony to a -C felony, and indicated that sentence would be imposed under the defunct provisions.
Very recently, a majority of the United States Court of Appeals for the Third Circuit disapproved of a similar disposition under a Delaware statute which provides that where a subsequent statute amends former statutory language but does so in an unconstitutional manner, the earlier statute is revived if consistent with the legislative purpose. In United, States of Amer. ex rel. Clark v. Anderson (502 F. 2d 1080) the majority held that the fair notice requirement of due process precludes the State -from applying the statute to the very defendant who succeeded in getting the amended statute declared unconstitutional.
The second challenge of the defendant at bar has as its target the constitutionality of section 65.00 (subd. 1, par. [6]) of the Penal Law.
*752 Effectively, this area of the statute provides for the sentencing of an offender to lifetime probation upon conviction for the A-III felonies of drug possession or sale (Penal Law, §§ 220.16, 220.39). Before a court may impose such a probationary sentence, it must (1) have the recommendation of the prosecutor that the 'offender has or is providing material assistance in the investigation, apprehension or prosecution of any person for an article 220 drug felony or an attempt or conspiracy to commit such a crime, (2) have the concurrence of either (a) the administrative Judge of the court, (b) the administrative Judge of the judicial district, or (c) such other administrative Judge as the Presiding Justice of the appropriate Appellate Division shall designate, and (3) conclude that the offender (a) does not require institutional confinement, (b) needs guidance, training or assistance which can be administered through probationary supervision, (c) is providing or has provided material assistance to the prosecutor, and (d) .such disposition is consistent with the ends 'of justice.
This provision is intended as a bargaining lever, and was carried over from the former Penal Law and calculated “ [t]o get small fry drug dealers or addicts to cooperate in the apprehension and conviction of the bigger traffickers.” (Hechtman, Supplementary Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, § 65.00, 1973-1974 Supplement, p. 88.)
Defendant’s principal criticism of this section is that it transfers an undue amount of the power of punishment to the District Attorney. The court is of the opinion that this attack fails to raise a justiciable constitutional issue.
To be sure, it is, in the long run, the prosecutor who must take the initiative in recommending the allowance of probation for an informant. But who in the criminal justice system is in a better position, in the first instance, to come forward with an opinion as to the usefulness and reliability of a potential informer? Certainly not the judiciary. It is, of course, the official charged with the duty to detect, prosecute and convict those who violate the law. The claim here amounts to no more than a baseless onslaught against prosecutorial discretion. “ Of course, any discretionary power may be abused, and unlawful discrimination in the exercise of a prosecutor’s power * * * would violate the equal protection guarantee of the Constitution.” (Cf. People v. Eboli, 34 N Y 2d 281, 290.) Defendant makes no such claim of discrimination.
*753 It should be noted that, in a dictum in his opinion in People v. Davis (33 N Y 2d 221, supra, p. 228) Judge Jasen of the New York Court of Appeals seemed to see salutary possibilities in the exercise of the particular discretionary prosecutorial power which defendant abhors.
What is more, under the terms of the section under scrutiny, the final decision as to the propriety of lifetime probation rests with the judicial arm.
Defendant’s final constitutional protest is leveled at an asserted disparity in plea bargaining rights accorded under certain provisions of the CPL.
Initially, the attack is aimed at CPL 220.10 (subd. 6, par. [a]) and the language of that section and subdivision which forecloses an indicted defendant of the right to plead guilty to any lesser offense than a Class A felony “ [w]here the indictment charges one of the class A felonies defined in article two hundred twenty of the penal law or the attempt to commit any such class A felony ”.
Noting the reference in the quoted language of the statute to “ class A felonies defined in article two hundred twenty of the penal law”, defendant accurately observes that the cited article deals exclusively with “ controlled substances offenses ”, or, in plain words, drug crimes.
He contends that the cited section is, in effect, a plea bargaining statute, and that the interdiction against pleas below the A grade amounts to impermissible discrimination in favor of the class of individuals indicted for A-I, A-II, B, C, D and E level felonies, whether drug oriented or not, and against the class of persons, such as himself, who have been indicted on charges of committing A-III crimes.
By way of example, he argues, and correctly so, that, for purposes of lesser pleas, an A-I offense may be reduced to an A-II or A-III, an A-II to an A-III, a B to a C, and so on down the line. By .contrast, he points out that an A-III “ controlled substance ” count may not be reduced in grade in the course of plea negotiations.
He avers that the Legislature, in thus limiting the plea bargaining rights of those charged with A-HI drug offenses, has arbitrarily destroyed the balance of relationship between drug crimes and other violations of the Penal Law, and that in consequence thereof, it has infringed upon the rights of the class comprised of those indicted for the commission of A-III drug offenses.
*754 The United States Supreme Court has termed “ plea bargains ’ ’ an essential part of the process in the administration of criminal justice at both the State and Federal levels. (Santobello v. New York, 404 U. S. 257, 260-261, 264.) But, an accused does not have a fundamental constitutional right to negotiate a plea to anything less than the entire indictment found against him. (Newman v. United States, 382 F. 2d 479.) Nor does an accused have an absolute right to have a guilty plea accepted. (Lynch v. Overholser, 369 U. S. 705, 731; Santobello v. New York, supra, p. 262.)
There is no question that, in enacting CPL 220.10 and its companion sections, CPL 220.20 and 220.60, the Legislature has recognized plea negotiation as an acceptable method of disposing of criminal charges. The passage of these sections represents a prior legislative determination of the propriety and efficacy of this practice.
However, there is nothing in the Federal or New York Constitutions which prevents the Legislature from reasonably restricting the right of any class of defendants to plead to reduced criminal charges. Nor is there any constitutional bar to the Legislature’s enactment of criminal laws which treat different classes of accused offenders in different ways insofar as the right to negotiate pleas to lesser crimes is concerned.
The only condition which the equal protection clause of the Fourteenth Amendment exacts is that the distinction between classes must rest upon criteria fairly and substantially related to the object of the legislation. “ A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.” (Cf. McGowan v. Maryland, 366 U. S. 420, 426.)
In the case at bar, the proscription against guilty pleas to offenses below the A felony grade, where the indictment charges an A-III drug crime, rationally promotes the legitimate desire of the Legislature to deter drug abuse and traffic. Thus, the differentiation of which defendant complains with regard to plea bargaining under CPL 220.10 (subd. 6, par. [a]) does not offend the equal protection clause.
As a parting shot, defendant voices a second complaint at what he labels an inequality in plea bargaining rights under the GPL. He points out that a criminal action may be commenced by either the finding of an indictment by a Grand Jury or by the filing of a felony information in a local criminal court.
Where the action is started by indictment, defendant says, an individual charged with an A-III felony is precluded by the *755 limitation in CPL 220.10 (subd. 6, par. [a]) from negotiating a plea to any offense below the A felony level. But, he goes on to say, where the action is instituted by the filing of a felony complaint alleging the commission of an A-III drug crime, there is nothing to prevent the accused in that situation from “ entering a plea of guilty to a misdemeanor” in an inferior court.
Defendant argues that, before the enactment of CPL 220.10 (subd. 6, par. [a]) a prosecutor’s choice of methods of instituting a criminal action had no effect on the ability of an accused to negotiate for and obtain the right to plead to any lesser offense. He contends that CPL 220.10 (subd. 6, par. [a]) deprives him of due process by allowing the District Attorney to proceed against a person in his situation by a means which restricts his right to plead .guilty to anything but an A felony.
It is presumed that, in advancing this argument, defendant had CPL 180.50 in mind when he spoke of the process of pleading to a. misdemeanor after an A-III felony charge has been lodged in a local court.
CPL 180.50 does, of course, permit an inferior court Judge, with the consent of the prosecutor, to reduce or convert a felony complaint to one charging a nonfelony offense.
But, this section is not, as defendant suggests, a plea bargaining statute. It is nothing more than a safety valve, so to speak, designed to take care of the instance where the charge of any felony is unwarranted.
This being so, defendant’s complaint boils down to nothing more than a renewed attack upon prosecutorial discretion. Absent an assertion of unlawful discrimination or abuse in the exercise of the prosecutor’s power, there is no justiciable constitutional issue in such a claim. (Newman v. United States, 382 F. 2d 479, supra; People v. Eboli, 34 N Y 2d 281, supra.)
Accordingly, the second branch of defendant’s omnibus motion is denied in its entirety.