THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* IMOGENE BROADIE, Appellant.

Second Department, November 18, 1974.

*Joseph Heller* for appellant.

*Nicholas Ferraro, District Attorney* (*Jenny M. Maiolo* of counsel), for respondent.

*Louis J. Lefkowitz, Attorney-General* (*Samuel A. Hirshowitz* and *Barbara Shore Resnicoff* of counsel), for intervenor.

SHAPIRO, Acting P. J. The defendant has been convicted of criminal sale of a controlled substance in the third degree, a class A-III felony, and has been sentenced to a term of imprisonment with a minimum of one year and a maximum of life, as mandated by statute (Penal Law, § 70.00, subd. 2, par. [a], subd. 3, par. [a], cl. [iii]). She makes a two-pronged attack

on the validity of the sentencing statute, contending (1) that by reason of its mandatory nature it constitutes an improper legislative infringement upon the exercise of judicial discretion and (2) that, even if that not be the fact, it is violative of the Eighth Amendment of the Constitution of the United States and section 5 of article I of the Constitution of the State of New York, which prohibit the imposition of cruel and unusual punishment.

We reject both contentions and hold that the sentencing provisions of the new drug law represent permissible exercise of legislative power and are constitutional.[1] The sentence is therefore affirmed.

### THE FACTS

The defendant was charged in two indictments with criminal sale of a controlled substance in the first, second and third degrees. The indictments were consolidated for the purpose of plea and the defendant admitted that on November 28, 1973, when she was 24 years of age, she sold a quantity of cocaine in violation of section 220.39 of the Penal Law (criminal sale of a controlled substance in the third degree). This was the defendant's first offense and, at the time of her arrest, she was gainfully employed. She asked the court at sentence for forgiveness and a chance to make something of her life and her attorney requested that the drug law in question be declared unconstitutional.

Although expressing sympathy for the plight of the defendant and intimating that he would impose a lesser sentence if he could, Justice MOSES WEINSTEIN then pronounced a sentence of one year to life, at the same time rejecting counsel's attack on the mandatory aspect of the above-specified provisions of section 70.00 of the Penal Law on the ground that its invalidity had not been demonstrated beyond a reasonable doubt.

### THE LEGISLATIVE ACTION

The Legislature has long been concerned with the increased use of narcotic drugs and its potential danger to society (see

---

1. Since section 70.00 of the Penal Law only became effective on September 1, 1973, it is not surprising that there are no appellate court decisions dealing with its constitutionality. The courts of original jurisdiction which have considered the issue are divided: the law was declared unconstitutional in *People v. Mosley* (78 Misc 2d 736 [County Ct., Monroe County]) and was upheld in *People v. Ellison* (78 Misc 2d 652 [County Ct., Westchester County]); *People v. Weiss* (78 Misc 2d 792 [County Ct., Suffolk County]); *People v. Gardner* (78 Misc 2d 744 [Supreme Ct., Westchester County]).

section 200 of the former Mental Hygiene Law [L. 1962, ch. 204, § 1, amd. by L. 1966, ch. 192, § 1]). In his Annual Message of January 3, 1973 former Governor Rockefeller emphasized that "the number one, growing concern of the American people is crime and drugs — coupled with an all-pervasive fear for the safety of their person and their property "; that "people are terrorized by the continued prevalence of narcotic addiction and the crime and human destruction it breeds "; that "we have tried every possible approach to stop addiction and save the addict through education and treatment — hoping that we could rid society of this disease and drastically reduce mugging on the streets and robbery in the homes "; that "we have achieved very little permanent rehabilitation — and have found no cure "; and that the "reign of fear cannot be tolerated." He added that the growing use of narcotics was involving a rising percentage of high school and college students; that crimes associated with addiction have spread a "reign of terror " which has to stop. Concluding that "all the laws we now have on the books won't work to deter the pusher of drugs," he then appealed for what he considered to be appropriate legislation (McKinney's 1973 Sess. Laws of N. Y., vol. 2, pp. 2317–2318).

The Legislature responded (L. 1973, chs. 276–278). Class A felonies were subclassified into A-I, A-II and A-III felonies and certain degrees of criminal possession and criminal sale of controlled substances were upgraded (L. 1973, ch. 276, §§ 9, 19).[2]

Prison sentences for these offenses were made mandatory, with discretion only as to the minimum term being left to the sentencing court. An A-I felony requires a minimum of 15 to 25 years; an A-II felony requires a minimum of 6 to 8⅓ years; and an A-III felony requires a minimum of 1 to 8⅓ years (Penal Law, § 70.00, subd. 3, par. [a]).[3] The *mandatory* maximum term for all class A felons is life imprisonment. In addition, the Legislature limited plea discussion where an indictment charged a class A felony as defined in article 220 of the Penal Law (CPL 220.10, subd. 6, par. [a]).

2. An A-I felony includes the crimes of criminal possession and criminal sale of controlled substances in the first degree (Penal Law, §§ 220.21, 220.43); an A-II felony includes possession and sale in the second degree (Penal Law, §§ 220.18, 220.41); and an A-III felony includes possession and sale in the third degree (Penal Law, §§ 220.16, 220.39).

3. The only exception, not here relevant, permits a sentence of lifetime probation for an A-III felon under certain conditions (Penal Law, § 65.00).

THE ISSUES

A. LACK OF SENTENCING DISCRETION

It is the function of the Legislature to determine the *scope* of a penalty for a given crime. Although the exercise of the legislative power is subject to constitutional restrictions (see U. S. Const., 8th Amdt.; N. Y. Const., art. I, § 5), there is no requirement in the Federal or State Constitutions that courts be given discretion in imposing a sentence. Thus, the multiple offender provisions of the former Penal Law (§§ 1941, 1942) were held impervious to attack, despite their mandatory nature. The fact that sentences thereunder were to be imposed pursuant to a mechanistic rule which deprived the courts of all discretion was held to be irrelevant (*Matter of Dodd* v. *Martin,* 248 N. Y. 394, 398–399; *People ex rel. Prisament* v. *Brophy,* 287 N. Y. 132, 136, cert. den. 317 U. S. 625; *People* v. *Gowasky,* 244 N. Y. 451, 466; cf. *Furman* v. *Georgia,* 408 U. S. 238, 239–240).

Therefore, despite any misgivings we personally may have with regard to the efficacy of the mandatory sentencing provisions (see Penal Law, § 70.00, subd. 2, par. [a]; subd. 3, par. [a], cl. [iii]), the first prong of the defendant's attack is rejected.

B. CRUEL AND UNUSUAL PUNISHMENT

The Eighth Amendment's prohibition against cruel and unusual punishment is not a static concept. On the contrary, it " must draw its meaning from the evolving standards of decency that mark the progress of a maturing society " (*Trop* v. *Dulles,* 356 U. S. 86, 100–101). Mr. Justice BRENNAN, in his concurring opinion in *Furman* v. *Georgia* (408 U. S. 238, *supra*), in laying down the principles by which a penalty, challenged as being cruel and unusual, is to be tested, said (p. 282) : " The test, then, will ordinarily be a cumulative one : If a punishment is unusually severe, if there is a strong probability that it is inflicted arbitrarily, if it is substantially rejected by contemporary society, and if there is no reason to believe that it serves any penal purpose more effectively than some less severe punishment, then the continued infliction of that punishment violates the command of the Clause that the State may not inflict inhuman and uncivilized punishments upon those convicted of crimes."

The present drug law meets those four requirements and, although one may well disagree with whether its provisions effec-

tively meet the drug problem, it may not be gainsaid that there is room for a difference of opinion on that subject.[4]

1. Hence, the Legislature could in its discretion, and upon making the findings which it did, determine that the prescribed punishment is not unusually severe, considering the fact that the ravages of narcotic addiction are visible on all levels of society and have created a " reign of terror " (Governor's 1973 Annual Message) and since " ' Nothing is more destructive to a community's well being than widespread drug abuse. More young people in our city die from drug abuse than from any other single cause. Hard drugs are indeed a cancer to our community. Society has mounted a massive effort to blot out this destructive evil ' " (*People* v. *Junco*, 43 A D 2d 266, 268).

A legislative enactment carries a strong presumption of constitutionality (*Wasmuth* v. *Allen*, 14 N Y 2d 391, 397; *Defiance Milk Prods. Co.* v. *Du Mond*, 309 N. Y. 537, 540–541), including, from its passage, a presumption that the Legislature has found the facts necessary to support the enactment (*I. L. F. Y. Co.* v. *Temporary State Housing Rent Comm.*, 10 N Y 2d 263, 269). Based upon the evils which the Governor and the Legislature found to be inherent in the use and sale of narcotics and related substances, punishment of imprisonment for life for higher degrees of possession and sale of controlled substances may not as a matter of law be held to be so severe as to constitute cruel and unusual punishment.

2. Since the sentencing statute is mandatory, there is no possibility " that it is inflicted arbitrarily " (*Furman* v. *Georgia*, 408 U. S. 238, *supra*; see, also, *People* v. *Fitzpatrick*, 32 N Y 2d 499, 513, cert. den. 414 U. S. 1050).

3. Mandatory life imprisonment, per se, is not, in the eyes of the law, considered to be either barbaric or torturous and is not such a punishment as is rejected by contemporary society (cf. *Weems* v. *United States*, 217 U. S. 349) and mandatory minimum terms, of varying kinds, have long been upheld (see *United States* v. *Chow*, 398 F. 2d 596; *United States* v. *Ross*, 464 F. 2d 376, cert. den. 410 U. S. 990; *Daut* v. *United States*, 405 F. 2d 312, cert. den. 402 U. S. 945).

4. The enactment by the Legislature of mandatory sentences presumes a finding that the penalty serves a valid social pur-

---

4. The *New York Times* of November 10, 1974 (p. 1) reports that " since former Gov. Nelson A. Rockefeller's toughened drug law took effect " at least 209 persons have been convicted throughout the State of drug felonies carrying mandatory life sentences. According to the report of the Division of Criminal Justice Services there were 17,453 felony drug arrests for the 14-month period before the new law went into effect.

pose (*I. L. F. Y. Co.* v. *Temporary State Housing Rent Comm.*, 10 N Y 2d 263, *supra*; *Lincoln Bldg. Assoc.* v. *Barr*, 1 N Y 2d 413). The Legislature apparently determined that mandatory prison sentences with a maximum term of life would serve more effectively than some less severe punishment. While we do not necessarily agree with its conclusion, we cannot say that such a finding is wholly unsupportable.

Though the statutory penalties are indeed harsh and in many cases unjust, any amelioration of their mandatory nature is a function for the Legislature, not the courts.[5] The sentence should be affirmed.

COHALAN, CHRIST, BRENNAN and BENJAMIN, JJ., concur.

Sentence affirmed.

5. In the same article of the *New York Times* (p. 85b) it appears that District Attorney Ferraro of Queens County has reported that a 19-year-old youth was convicted by a jury of selling orange juice containing a single dose of methadone. Under the new law that youth must be sentenced to a mandatory life sentence with a 15-year minimum term in prison before he is even eligible for any possible parole.