THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ARTHUR LEE VENABLE, Appellant.

Third Department, November 27, 1974.

*Daniel G. Moriarty* for appellant.

*Ralph W. Smith, Jr., District Attorney* (*Peter L. Rupert* of counsel), for respondent.

*Louis J. Lefkowitz, Attorney-General* (*Peter Joseph Dooley* and *Ruth Kessler Toch* of counsel), in his statutory capacity under section 71 of the Executive Law.

HERLIHY, P. J. Upon this appeal it is not disputed that the defendant on September 26, 1973 sold white powder to a policeman and that the envelope contained heroin.

The defendant contends firstly that the sentence imposed herein is unconstitutional as being cruel and unusual punishment in violation of the Federal and State Constitutions. Secondly, the defendant contends that the trial court committed reversible error in regard to a note from the jury stating it was unable to agree.

I·

As to the alleged error of the trial court, at sentencing the court stated that it had received a note from the jury stating it was unable to agree without advising the defendant or his counsel of such note and that its sole response was to send the jury to dinner. The record discloses that the jury retired after the charge to commence deliberations at 4:05 P.M. and went to din-

ner at 6:35 P.M. It would seem academic that a trial court could properly direct a jury to continue deliberation after such a short period of time. Of course, the trial court did not so direct, but simply ignored the note. The record does not disclose any possible prejudice to the defendant in regard to the note from the jury and no objection or request for a new trial was made at sentencing on the basis of the note. Any possible error was waived by the defendant and, in any event, any such supposed error would not justify a reversal of the conviction.

## II

The defendant did not raise any constitutional objection to the imposition of sentence at sentencing and did not at any time question the constitutionality of subdivision 1 of section 220.39 of the Penal Law in the proceedings before the trial court. As a consequence, we are without the benefit of a decision by the Albany County Court on this issue in this particular appeal.

However, the parties to the appeal have brought to our attention a recent decision of the Monroe County Court (*People* v. *Mosley,* 78 Misc 2d 736) which held that the mandatory imposition of an indeterminate sentence from one year to life pursuant to section 70.00 of the Penal Law as required for violation of subdivision 1 of section 220.39 of the Penal Law was cruel and unusual punishment, and, therefore, unconstitutional. The parties have also brought to the attention of the court a more recent decision by the Supreme Court in the County of Westchester (*People* v. *Gardner,* 78 Misc 2d 744) and another by the Albany County Court (*People* v. *Hollingsworth,* 79 Misc 2d 469) both of which find that the classification of the instant crime as a class " A " crime and the punishment imposed does not constitute cruel and unusual punishment.

The decision of Mr. Justice QUINN, JR., in *People* v. *Gardner* (*supra*) adequately establishes that there is no basis for considering the present criminal sanctions in this State as related to drug offenders to be in any way violative of the constitutional prohibitions against cruel and unusual punishment.

It is well established that the wisdom, necessity or efficacy of legislation are not matters to be considered by the courts. (8 N. Y. Jur., Constitutional Law, § 72, pp. 599–602.) Moreover, the presumption of constitutionality is one of the strongest presumptions, not readily overcome (*Weems* v. *United States,* 217 U. S. 349, 366; *Wasmuth* v. *Allen,* 14 N Y 2d 391; *Wiggins* v. *Town of Somers,* 4 N Y 2d 215). (See, also, *Lawton* v. *Steele,* 119 N. Y. 226, 232, 233.)

Section 220.39 of the Penal Law states: "A person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells: 1. a narcotic drug".

Subdivision 2 of section 70.00 of the Penal Law imposes the mandatory maximum sentence: "The maximum term of an indeterminate sentence shall be at least three years and the term shall be fixed as follows: (a) For a class A felony, the term shall be life imprisonment".

The New York State Constitution provides: "Excessive bail shall not be required nor excessive fines imposed, nor shall cruel and unusual punishments be inflicted, nor shall witnesses be unreasonably detained." (N. Y. Const., art. I, § 5.)

Similarly, the Eighth Amendment of the United States Constitution has been applied to the States through the Fourteenth Amendment (*Robinson* v. *California,* 370 U. S. 660, 666; *People* v. *Davis,* 33 N Y 2d 221, 226), and contains the following language: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." There is no single standard for determining what is cruel and unusual punishment, and its scope has been found to be difficult to define (*Trop* v. *Dulles,* 356 U. S. 86, 99). Inherent in the determinations of cruel and unusual punishment is the concept that " a precept of justice that punishment for crime should be graduated and proportioned to offense " (*Weems* v. *United States,* 217 U. S. 349, 367, *supra*). *Weems* also concluded that punishment " ' in the State prison for a long term of years might be so disproportionate to the offense as to constitute a cruel and unusual punishment ' " (*id.,* p. 368).

The New York State Court of Appeals has recently discussed the origin of the Eighth Amendment and its purpose: "Doubtless enacted to preclude the barbarities that had marred the administration of the English criminal law — burnings, brandings, quarterings, disembowelings and the like — the amendment has come to mean much more. Prohibited are not only inhuman methods of punishment, but punishment disproportionate to the offense (*Weems* v. *United States,* 217 U. S. 349; *Trop* v. *Dulles,* 356 U. S. 86 [opn. of the Chief Justice]) " (*People* v. *Davis,* 33 N Y 2d 221, 226, *supra*). In *Furman* v. *Georgia* (408 U. S. 238, 258), Mr. Justice BRENNAN in a concurring opinion recognized that the standard applicable under the Eighth Amendment is one " not susceptible to precise definition ", but he recommended that a standard should be developed from an analysis of several factors (*id.,* p. 282; see, also, *Hart* v. *Coiner,* 483 F. 2d 136, cert. den. 415 U. S. 983; *People* v. *Mosley,* 78 Misc 2d 736, *supra*).

Consequently, the following factors should be considered in determining whether the defendant's punishment of a mandatory maximum sentence of life imprisonment is constitutionally disproportionate to the crime of the criminal sale of a controlled substance in the third degree: (1) the nature and gravity of the offense (*Furman* v. *Georgia, supra*, p. 325 [MARSHALL, J., concurring]); (2) the legislative purpose behind the punishment (*Furman, supra*, p. 300 [BRENNAN, J., concurring]); (3) a comparison of how the defendant would have been punished in other jurisdictions for the same offense (*Hart* v. *Coiner, supra*, p. 141); and (4) a comparison of punishment in the same jurisdiction for other types of crimes (*Weems* v. *United States*, 217 U. S. 349, 381, *supra*).

The essential argument of the defendant is that the present scheme which precludes plea bargaining and must result in lifetime surveillance of a citizen whether in or out of prison is actually the imposition of one of the severest penalties possible for a " minor " offense. It is to be noted that there is no reason to believe that any but the most hardened antisocial (meaning antilaw abiding) individuals will actually be incarcerated for life. Plea bargaining is still possible, within the framework of the statute, as to the determination of the length of the minimum sentence.

It is well known that prior to the drafting of the present penalties the Legislature and executive of this State thoroughly investigated what had become generally referred to as the drug problem in New York State. Furthermore, the social repercussions of the existence of the market were established as being an impetus for the rapidly rising rate of all types of such criminal activity as would result in the acquisition of money by users for satisfaction of drug craving. The fact that ultimate consumers of the illicit drugs were often accidentally killing themselves by overdose was and is well known. In *People* v. *Junco* (43 A D 2d 266, 268) the court said: " ' Nothing is more destructive to a community's well being than widespread drug abuse. More young people in our city die from drug abuse than from any other single cause. Hard drugs are indeed a cancer to our community. Society has mounted a massive effort to blot out this destructive evil.' " The insidious radiation of criminal activity from anyone illicitly possessing the hard drugs requires a strong deterrent whether or not the individual convicted is or was able to perceive such radiation from his apparently isolated conduct.

To be sure, the best possible attack on the drug problem would have been the confiscation of such contraband at the point where

it entered New York State or the United States. However, such an intensive attack was rendered impossible as a matter of practicality in terms of manpower and obviously could not be accomplished except by the broadest invasion of the constitutionally protected rights to privacy of all citizens — law abiding or not. Any resort to means designed to overcome the rights to privacy of all citizens would invite a permanent abrogation of principles necessary for the preservation of a government which represents the people as opposed to one which simply governs the people. For the foregoing reasons, it was well established that a frontal attack dependent upon the inexorable confiscation of illicit drugs was not reasonable. Accordingly, severe punishment of the importers of such drugs into this State, while applicable, would not by itself serve as a practical deterrent to the spread of drug trafficking.

As in any business involving ultimate consumption of a product by the public at large, the drug business involves, after import into this State, various intermediate processors and handlers of the drugs before ultimate sale to a person for personal consumption or use. Each intermediate handler and possessor would normally appear to be more guilty than his successor in possession as far as making the drugs available is concerned, however, every seller or one who attempts to sell is made subject to lifetime surveillance if convicted. Furthermore, the same ultimate party is injured even if the transfer or attempted transfer is in nature only a gift or on a cost basis and not for a profit as a favor. The defendant contends that this equal treatment of maximum punishment for all grades of such offenders necessary violates the rule that punishment should be graduated and proportioned to the offense.

In *People* v. *Gardner* the court said (78 Misc 2d 744, 749–750, *supra*): " The very drug crime classification and sentencing provisions which defendant so stridently objects to reflect no more than a legislative awareness that earlier and less stringent measures had failed to deter illicit drug traffic and the heinous crimes that it spawns. (Cf. Annual Message of the Governor, McKinney's Session Laws of N. Y. [1973], vol. 2, pp. 2317–2322.)

" The mere fact that, in beefing up the penalties for violation of the narcotics law, the Legislature allowed more lenient sentences for offenses deemed by some to represent a greater evil, does not convert the penalties under fire in this case into cruel and inhuman punishments.

" ' That for other offenses, which may be considered by most, if not all, of a more grievous character, less punishments have

been inflicted does not make this sentence cruel. Undue leniency in one case does not transform a reasonable punishment in another case to a cruel one.' (*Howard* v. *Fleming,* 191 U. S. 126, 135–136.) ' The comparative gravity of criminal offenses and whether their consequences are more or less injurious are matters for \* \* \* [a State's] determination.' (*Pennsylvania* v. *Ashe,* 302 U. S. 51, 55.) "

Some of our sister States have similar and in some instances more severe sentences. (See *State* v. *White,* 254 La. 389.)

One can concede that upon the isolated incident of the possessor giving a portion of his illicit drug to a friend the mandatory imposition of lifetime surveillance is not proportioned when compared with a pusher or other person involved in the sale of the drug for a profit. However, as determined by the Legislature, the making of a profit is not the criminal activity which is attacked by the subject provisions of the Penal Law. Regardless of the niche occupied by an offender in the illicit traffic of drugs, it is the insidious criminal activity which flows from any marketing of the drug whether for a profit or as a favor which is outlawed. The attack on society from drug use and abuse is that which arises from consumption and which flows from the fact of a market existence for consumption. In terms of the heinousness of the crime, it is the transfer to a consumer that is in fact the most horrible incident of the entire drug distribution hierarchy. The end result of deliberately providing hard drugs to a consumer has been established by the public debate in New York State as the equivalent in probable result of deliberately taking aim with a deadly weapon and killing an unknowing and unsuspecting victim. In terms of wantonness, the seemingly innocent transfer of a drug by one consumer to another, addicted or not, has appeared to be more devastating than murder since it is probable that many of the consumers will become addicted and will thereafter support their habit by attempting to establish new consumers and by the commission of crime often either violent or having a potential for violence.

The danger is well stated in *Stewart* v. *United States* (325 F. 2d 745, 746), where the court stated:

" While Congress was free to refuse to accord the privilege of parole or to permit any other alleviation, either judicial or administrative, as to narcotics sentences, without indication of its reason for doing so, the legislative history involved makes clear that it regarded an urgent reason as existing for the action it took \* \* \*

'' The Committee pointed out that the narcotic traffic was engaged in recruiting, as peddlers, persons who did not have a previous narcotic conviction, and that a substantial number were being obtained in this class, because of the profit, and because of the possibility that, if caught, they would as first offenders, be given suspended sentence, probation or parole. The statement concluded: ' Therefore, it is the view of your committee that the first-offender-peddler problem will become progressively worse and eventually lead to the large scale recruiting of our youth by the upper echelon of traffickers unless immediate action is taken to prohibit parole, probation, or suspension of sentence in the case of all persons convicted to trafficking in narcotic and marijuana drugs '.'' (See, also, *People* v. *Davis, 33 N Y 2d 221, supra.*)

It is urged upon the court that the crime of simply transferring or attempting to transfer hard drugs from one person to another is not of such a grade of moral turpitude or depravity as '' assassins, homicidal incendiaries and kidnappers ''. Nevertheless, the insidious effect of hard drugs has been reasonably shown in public debate to exceed the moral turpitude of those classes of criminals by ultimately being a prior contributing factor in many instances to those particular crimes. There would appear to be a sound basis for a Legislative determination of punishment at least equal to the several categories of criminals and indeed exceeding them by eliminating plea bargaining in part.

Applying the various tests, the court is of the opinion that subdivision 1 of section 220.16 and subdivision 1 of section 220.39 of the Penal Law and the penalty provisions prescribed therein meet the requirements of the Eighth Amendment.

The foregoing opinion as to punishment while referring to learned studies or precedents is primarily one directed to a matter of public policy within the confines of current public attitude toward criminality in general and general constitutional prohibition of '' cruel and unusual punishment ''. While a court may and must act to strike prohibited punishment, still a base must be discerned for such action not composed of simply sympathy for what some might believe to be mere youthful offenders or noncriminal types (whatever the latter might encompass). This opinion is based upon the public debate which in this State preceded the adoption of the attacked mandatory sentence structure and which has been carried on since in public forums and media and is of common knowledge to all citizens of the State.

It must be observed that as useful and valuable as the plea bargaining process is in administering the criminal process in a free society, there is nothing which would indicate that either a prosecution or a defendant has any constitutional duty or right in regard to the existence of plea bargaining. Accordingly, the direction of the Legislature prohibiting plea bargaining in cases such as this or in any case can be nothing but a matter solely committed to the Legislature and the Executive. Furthermore, while courts have from common law the right to suspend sentences and impose limited probation, such is limited by any enacted statutes. (See *People ex rel. Forsyth* v. *Court of Sessions of Monroe County,* 141 N. Y. 288.)

While obviously the public debate has contained matters both pro and con, this court is not required to find in favor of either side, but only determines that the appellant has failed to establish that the mandatory imposition of lifetime surveillance is without a reasonable basis supporting the applicable Legislative and Executive determination. (Cf. *Furman* v. *Georgia,* 408 U. S. 238, *supra.*) At the present time the mandatory aspects of the Penal Law in regard to drugs do not individually or together present any violation of the constitutional prohibition against cruel and unusual punishment.

In our present-day society, the punishment fits the offense and the offender. When the epidemic has passed, it will be time to consider amendments.

The other alleged errors have been examined and determined to be without merit.

The judgment should be affirmed.

SWEENEY, KANE, MAIN and REYNOLDS, JJ., concur.

Judgment affirmed.