Jacob Lutsky, J.
The defendant, Edwin C. has moved this court for an order to dismiss the instant indictment pursuant to CPL 210.40. The defendant was indicted for criminal possession of a controlled substance, to wit, methadone, in the second degree.
A hearing was held by this court on April 10, 1975 to determine if the interests of justice will be served by dismissal of the indictment. A motion for such a dismissal under CPL 210.45 may neither be granted without a hearing nor denied without unquestionable documentary evidence refuting the defendant’s allegations (People v Weiss, 78 Misc 2d 792). This court requested and has received a full and complete presentence investigation report from the Department of Probation. The court has reviewed and analyzed this report, the arguments of counsel at the hearing, and the testimony adduced at the motion to suppress the methadone.
Statutes such as CPL 210.40 depend only on principles of justice, not on the legal or factual merits of the charge or even on the guilt or innocence of the defendant (People v Quill, 11 *246 Misc 2d 512, 513; People v Davis; 55 Misc 2d 656; People v Graydon, 69 Misc 2d 574).
"The value of imposed order arises out of its direct relation to the sense of injustice.” (Cahn, Freedom, Order & Law, NYU L Rev 20, 63 [1948]; People v Taylor, NYLJ, April 17, 1975, p 15, col 8.)
"The highest educational achievement of imposed order relates, however, not to criminals or their victims, but to the whole of society. Society has been generally viewed as acting upon the criminal and prosecution as a stimulus to his desired or undesired reaction. This reaction is only one side of the learning process. Society, the stimulus, reacts in turn to the trial which it institutes and the punishment it inflicts. It rarely identifies itself so completely with its judicial arm that it cannot criticize or feel revulsion.” (Supra, p 64.)
"CPL 210.40 is not a catch-all residuary clause authorizing dismissal as an exercise of absolute discretion. Rather is dismissal upon that ground governed by the substantive standard set forth in the provision and procedural requirements of specific notice, hearing and findings, even when the consideration of dismissal upon that ground is sua sponte (People v Clayton, 41 AD2d 204). Dismissal of an indictment in the furtherance of justice must rest upon a 'sensitive balancing’ of the interests of the individual and the State.” (Supra, pp 207-208; People v Kwok Ming Chan, 45 AD2d 613, 616.)
People v Clayton (supra, p 208) states that among the considerations which are applicable to the instant issue are:
(a) the nature of the crime;
(b) the available evidence of guilt;
(c) the prior record of the defendant;
(d) the punishment already suffered by the defendant;
(e) the purpose and effect of further punishment;
(f) any prejudice resulting to the defendant by the passage of time; and
(g) the impact on the public interest of a dismissal of the indictment.
As to the defendant’s prior record, the defendant stated that he has never been convicted of a crime; the District Attorney has offered no proof to the contrary. The report from the Department of Probation verifies the defendant’s statement.
*247 Turning to the nature of the crime, this court takes note that there is presently pending before our State Legislature proposed changes regarding the crimes of sale and possession of methadone. These proposals are being sponsored by defense attorneys as well as prosecuting attorneys. In a recent legislative committee hearing changes in the methadone law were urged by a member of the Legal Aid Society and an upstate District Attorney. In addition, the State of New York Office of Prosecutorial Services has offered amendments to our present statutes pertaining to the possession and sale of methadone. The afore-mentioned proposals urged the easing of the methadone laws as compared to the other illegal narcotics laws.
It is obvious that prominent legal authorities are stressing the need to downgrade the methadone statutes.
Recently, Mr. Justice Polsky stated in People v Carter (80 Misc 2d 1081, 1088): "I can conceive of no rational basis for a law which treats * * * therapeutic methadone * * * to which a clinic employee has added an ounce or so of liquid, with the same degree of criminality and sanction as the same weight of more potent, illicit narcotics possessed or sold in dosage quantities at least one hundred times as great.”
Regarding the available evidence of guilt, the defendant, who is enrolled in a duly accredited methadone program, admitted possession of a single vial of methadone, which is the subject of this indictment.
This is but one isolated incident of an additional dosage of methadone for personal use.
At the motion to suppress, the defendant testified that he was a former drug addict, a user of heroin. This aspect of the defendant’s life occurred in the early 1970’s. Through his own initiative and self-help he began to use methadone to alleviate his addiction, first by obtaining illegal methadone and then by enrolling in a duly qualified clinic.
The probation investigation states: "The defendant attempted to enroll at the Methodist Hospital Maintenance Clinic in about November of 1973, but was at first told that since he showed no needle marks, he could not be accepted. He applied again however and was told that he would be put on a waiting list that would take about 3 months. Defendant states that during this period, he wanted to stop using heroin and began using methadone illegally, purchasing it on the street.”
*248 Of interesting importance is that at all times the defendant was gainfully employed by a major public utility.
This court is in receipt of a letter dated March 12, 1975 from the defendant’s employer. This letter states in part: "Edwin C. is employed by * * * at the present and has been since July, 1968. In the past 2Vi to 3 years, Eddie’s attendance on the job has been good. He has never had a lateness problem during this period. His production in the field has, also, improved and has at no time had any complaints against him from customers. In fact, as recently as December, 1974 he received an accomodation letter * * * from one of our customers. Eddie has commendations on his record for jobs completed in hospitals, banks, colleges, etc., where he has installed complex switchboard equipment, for which he has had special training in our schools”. This letter is indicative of the excellent work caliber of this defendant. A record of such high praise which is devoid of any reprimand whatsoever is one that the defendant is proud to present to this court for evaluation. This is a most impressive appraisal of the character, ability and dedication of this defendant.
The defendant is married and the father of a two-year-old son and a one-year-old daughter. The defendant’s weekly earnings are approximately $250, which reflects a stable family life.
An examination of the prepleading report indicates that this defendant is a conscientious and hard-working individual and family man.
The report states that the defendant has received a high school diploma. The defendant enlisted in the United States Navy where he received an honorable discharge after serving three years, including two years and eight months of foreign service.
At the time of the commission of this crime, the defendant was enrolled in the South Brooklyn Methadone Maintenance Program. The defendant is now duly enrolled in the Methodist Hospital Methadone Clinic. The investigating probation officer states that the defendant "is functioning very well on his medication.” The report goes on to say, "A contact with * * * defendant’s counselor at Methodist Hospital reveals that defendant reports regularly 3 times per week, receives 100 mgs. per day medication, and that his functioning is 'excellent.’ He reports readily for counselling, is open to such counselling and was said to be a 'model patient’ by * * * He stated that the *249 defendant is not ready for detox, that if it were attempted, it would probably be a failure at this point, but that he and defendant are working towards this goal. Defendant has been a patient at this clinic since 7/4/74, which was just two weeks after the instant offense. Defendant himself states that very little of the milling about and hanging around that went on at the South Brooklyn Center goes on at Methodist Hospital. He feels it’s a much better program and hopes to be ready to detoxify within the year.”
This court believes that the destruction of this defendant’s life would be a travesty of justice. The Probation Department states the "defendant appeared to be petrified at the idea of going to jail or if this turns out not to be the case, of losing his job * * * He states that this is the only mistake that he’s made * * * and is functioning very well on his medication.”
What good would be served by sending Edwin C. to jail? The investigating probation officer states, "It appears that defendant is not a criminally oriented individual”. If the defendant were incarcerated, what would become of his family? The evidence submitted to this court demonstrates a sound family relationship that would only be destroyed by the punishment required by law and an overwhelming burden strapped upon the community.
Prison, as a source of rehabilitation, is not the answer. This defendant has commenced his own process of rehabilitation. His record indicates that he has been very successful in disciplining himself and adjusting to not only his own needs, but that of his family and society as well.
It is obvious that this defendant has found his "niche” in society. He has made an extraordinary adjustment to meet the needs of his family. He has contributed to the welfare of his family as no other person could;
What would be the impact upon the public if this indictment were dismissed? "Defendant is quite frightened of the reality that he is facing a jail sentence, and of the possibility of losing his job * * * It appears that defendant is not a criminally oriented individual, that he has a stable family life, an excellent work record as well as an excellent military record. A plea to a charge that would meet a mandatory jail sentence would seem to serve no purpose in this case,” concludes the investigating probation officer. Certainly, there can be no ill effect upon the public should this indictment be dismissed in the interests of justice.
*250 The recommendation by the Department of Probation clearly substantiates the entire proceeding before me.
Based upon the evidence submitted, this court, in weighing "the sensitive balancing of the interests of the individual and the state” (People v Clayton, 41 AD2d 204, supra; People v Kwok Ming Chan, 45 AD2d 613, supra), finds that the harm, destruction and impact to the defendant far outweigh the impact, if any, upon the public.
Accordingly, the defendant’s motion to dismiss the indictment in the interest of justice is hereby granted.
The indictment is dismissed and the defendant is discharged.