Martin Rodell, J.
Defendant moves to reargue the portion of the decision of this court issued on April 22, 1975 which denied his motion to dismiss the indictment on the ground that the aggregate weight standard as applied to methadone is unconstitutional. In support of his contention that said standard is unconstitutional in its application to methadone, he cites People v Carter (80 Misc 2d 1081). The defendant’s motion to reargue is granted. Upon reargument, the court adheres to its original decision and makes the following additional comments:
The court has examined defendant’s motion papers, his brief and reply brief. The issue raised by the defendant is an extremely narrow one. He attacks the aggregate weight standard as it is applied to the unauthorized possession or sale of small amounts of treatment methadone by patients in the process of rehabilitation. Considered on its face, it must be denied as a request to the court to deny the equal protection of the law to certain classes of methadone sellers. It would, if granted, establish three different classes of defendants for the commission of the same crime. The first and most privileged would be rehabilitation patients who sell treatment methadone. The second class would be patients who sell non-treatment methadone. The final class would be any non-treatment seller who sells any kind of methadone. The status of patients in a rehabilitation program is not a rational basis for distinguishing between the sellers of a single dose of treatment methadone, nor is the factor that methadone is "treatment” or "nontreatment” a rational basis to ask for different treatment of persons who commit what is essentially the same *1051 crime. Indeed, defendant’s own argument is that there is no rational reason for article 220 of the Penal Law to distinguish between the sellers of a single dose of heroin or cocaine and the sellers of a single dose of methadone. If this is true, how much less rational is it to distinguish between sellers of a single dose of methadone?
For the court to determine that this remedy would not create an unconstitutional denial of equal protection of the law, it must assume certain facts. The first fact is that all illegal sales of methadone are made by persons who are in a rehabilitation program. Secondly, the court must assume that all methadone illegally sold is treatment methadone and hence supplied by State-run or State governed rehabilitation programs.
If the court assumes that these are indeed the facts which underlie defendant’s motion, then unlike Mr. Justice Polsky in People v Carter (80 Misc 2d 1081, supra), who could not conceive of any rational basis for applying the aggregate weight standard to the defendant, this court finds a very rational basis for doing so.
Treatment patients as a class have been made by the Legislature the repository of a unique trust in a society where few lay persons have the right to legally possess controlled substances which are the subject of abuse. The rehabilitation patient holds such a right. That right is limited to methadone which is supplied primarily by the State or by programs functioning under government regulation. Under the facts postulated here, the government becomes the ultimate supplier of all illegal methadone pushed on the streets. The treatment patient under these facts becomes the sole illegal purveyor of illegal methadone. Government to prevent itself from becoming the unwitting partner in crime to those in whom it has reposed its trust may exact a higher penalty from them than from those who deal in totally illicit contraband. This is a very rational basis for distinguishing between classes of single dose pushers of controlled substances.
The factual experience of this court shows that although most sellers are treatment patients, there are sellers who are not registered in methadone maintenance treatment programs. Experience also shows that almost all, if not all of these sales, involve treatment dosages of methadone.
In August, 1974 a report issued by New York City’s Medical Examiner, Doctor Dominick J. Di Maio, covering 1973, showed *1052 that methadone used by itself or in combination with other drugs, was the leading cause of drug related deaths in this city. There were 181 deaths from methadone alone as compared to 91 from heroin alone. One-hundred-ninety-six deaths occurred from the use of methadone in combination with other drugs as compared to 65 for the use of heroin combined with other drugs. In the first half of 1974 there were 131 deaths from methadone use and 140 from the use of methadone combined with other drugs. In the same period 50 persons died from the use of heroin alone while 45 died from the use of heroin in combination with other drugs. There were 420 drug related deaths in the first half of 1974.[1] Forty-three deaths, or 10% of the total deaths involved rehabilitation patients. Not all of these patient deaths involved the use of methadone.
It is clear from these figures that there is a substantial non-patient market for methadone. It is equally as obvious that methadone is still the major cause of drug abuse deaths in the City of New York. These facts coupled with the fact that government is the single largest supplier of methadone that finds its way into the illegal market provides a very real and very rational basis for more stringent penalties for the seller of one dose of methadone than the seller of a single dose of heroin or cocaine.
"The gravity of the offense is obviously key, as is the gravity of the danger which the offender poses to society.” (People v Broadie, 37 NY2d 100, 112.) The danger from the sale of a single dosé of methadone is greater than that from the sale of a single dose of heroin or cocaine. Government has not only been made the unwitting supplier of all illegally sold methadone but has been made a partner in the death of its own citizens.
This court must disagree with Justice Polsky. There are very rational reasons for the application of a stricter standard as applied to methadone sellers.
While it is always a strong temptation for a court to impose its own will on legislation, it cannot do so. The courts and the Legislature are coequal branches of government. A court should not pass upon the wisdom of the Legislature’s acts.
*1053 In his motion papers the defendant also seeks to reargue the issue of cruel and unusual punishment. That motion is denied. The punishment provided by the Legislature for violations of article 220 is not cruel and unusual punishment. (People v Broadie, 45 AD 2d 649, affd 37 NY2d 100.)
It is clear that action on the part of the Legislature in relation to methadone maintenance treatment programs is required. Action is required to eradicate the threat that free or cheap government supplied methadone presents to non-patients while keeping the undeniable valuable social effects that have come from these programs. Serious consideration should be given to programs of on-premises consumption in clinics to be kept open 24 hours a day, seven days a week.

. The remaining 54 deaths are covered by the categories heroin and methadone in combination and heroin, methadone and other drugs in combination. There were 28 deaths in the first category and 26 in the second.