OPINION OF THE COURT
Albert M. Rosenblatt, J.
The defendant, Stanley L. Houston, moves for a trial order *1013 of dismissal upon a charge of sale and possession of approximately nine pounds of marihuana, under the statute by which the sale of more than a pound of marihuana is punishable as a class C felony (Penal Law, § 221.55, L 1977, ch 360), and possession of more than a pound is punishable as a class D felony (Penal Law, § 221.25, L 1977, ch 360).
The motion followed the testimony of the People’s expert witness, a New York State Police chemist, who testified that while marihuana was present, in some unknown amount, in each of the samples taken from each of the 20 bags which comprised the alleged sale, he did not and cannot plausibly perform the kind of quantitative analysis by which the weight of the marihuana can be determined. .
The issue goes to the very integrity of the statutory scheme by which marihuana has been classified, under the "Marihuana Reform Act of 1977”, as a commodity to be measured, for purposes of criminal gradations, under a "pure weight” standard. It is argued that the statute, as written, forecloses conviction, in this case, for anything but minute quantities, whether possessed or sold.
For the reasons which follow, the court believes the defendant’s legal position to be, in part, correct.
Criminal responsibility for the sale and possession of controlled substances in New York is, for the most part, made to depend on the amount involved.
Based, presumably, on the varying characteristics of controlled substances, the Legislature has, where the level of culpability is influenced by the amounts sold or possessed, devised two measurement standards with penalties corresponding to weight. Some drugs, such as methadone, are to be measured on a "pure weight” basis. Others, such as narcotics, are measured under an "aggregate weight” basis. When a statute makes criminal, for example, the unlawful sale of "five milligrams or more of lysergic acid diethylamide [LSD]” (Penal Law, § 220.41, subd 4), a pure weight standard is contemplated, and a conviction may rest only upon the presence of five milligrams or more of LSD, as opposed to, say, a liquid weighing over five milligrams containing LSD in some unspecified amount. The latter standard is what has come to be called "aggregate weight,” the former "pure weight”. The difference is well established, and upon that difference rides *1014 the most profound chemical and legal implications.[1]
Before 1977 (L 1977, ch 360), marihuana was criminally graded on an aggregate weight basis. The immediate precursor, for example, of the class D felony marihuana possession statute (Penal Law, former § 220.06, subd 3) provided that "A person is guilty of criminal possession of a controlled substance in the sixth degree when he knowingly and unlawfully possesses * * * one or more preparations, compounds, mixtures or substances of an aggregate weight of one-quarter ounce or more containing marihuana” (emphasis supplied).
Under that formulation, any quantity of marihuana contained within a blend weighing in excess of one quarter ounce would satisfy the standard, though the marihuana itself be less than one quarter ounce. The nature of the criminal substance was relevant, and indeed imperative to establish a legal case, but the amount or quantity of marihuana contained within the mix was generally not.[2] Police laboratories did not customarily, if at all, perform quantitative analyses in marihuana cases, nor was any such test statutorily required or decicisionally perceived.
Came then the 1977 statutory change. Marihuana possession and sale was converted from an aggregate weight to a pure weight crime, where larger amounts were involved. Indeed, the 1977 possession format lists no less than six levels of culpability for marihuana possession based on the weight of the amount of marihuana possessed, ranging from C felony possession (over 10 pounds; Penal Law, § 221.30) to violation possession (any amount; Penal Law, § 221.05).
With regard to sales, there are now five categories, ranging from C felony sale (over a pound; Penal Law, § 221.55) to misdemeanor sales (Penal Law, §§ 221.40, 221.35). Under all of these gradations, severity of the crime pivots on the amount of marihuana involved.[3] The language used in these statutes is *1015 undeniably that of pure weight. The weight of the marihuana itself therefore determines the degree of the crime.
What is marihuana? It is defined under subdivision 20 of section 3302 of the Public Health Law, and, for better or worse, that definition governs (Penal Law, § 220.00, subd 6). The section reads as follows: " 'Marihuana’ means all parts of the plant of the genus Cannabis, whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin. It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination.”
At the trial, the People’s chemist, whom the court found to be both competent and commendably candid, acknowledged that he could not, to a reasonable degree of scientific certainty, rule out the presence or gauge the amount of nonmarihuana. His test was essentially an aggregate weight analysis, from which he neither sought nor was able to determine what part of the mass was marihuana as defined, and what was not. He could and did state that the 9.3 pounds of mass were divided among 20 bags and that each bag contained marihuana. But he could not state the weight of the marihuana within each bag or within each of the samples he tested from each bag. He could not exclude the presence of ground mature stalks, stalk fibers, sterile seeds, or any of the other matter specifically listed under the statute as nonmarihuana. Nor could he chemically rule out the presence of oregano, sage, or other "adulterants,” in any degree, large or small.
In short, he could not give an expert opinion as to the weight of the marihuana as defined, on the ground that marihuana is not susceptible of quantification.
This, of course, is no reflection on the chemist or his procedures. The expert stated that the statute, as written, can be met, only if he were, in his words, to perform a separate test on each of the countless ground particles which comprise *1016 the mass. If so, such a procedure would be quite obviously untenable.
This court does not and need not conclude that every marihuana possession prosecution based on volume is inevitably doomed to failure under existing law. Conceivably, instances may arise in which test samplings may legally establish the existence of pure marihuana in the unsampled remainder, by drawing a statistical analogy to the procedure upheld in People v Argro (37 NY2d 929). There, the defendant had 148 glassine envelopes in 10 batches. On the basis of the discovery of heroin in 10 sample envelopes, it was possible to conclude that the average weight, in each envelope, was 63 milligrams, and, by extrapolation (multiplying the average weight by the number of envelopes), to further conclude that the defendant possessed a mass of more than one third ounce containing heroin. (See, also, Dixon v State, 357 NE2d 908 [Ind]; People v Gilmour, 78 Misc 2d 383; State v Hults, 9 Wash App 297.) But if that is at all possible — a point which must be left to experts — it will not be easy, and may be legally insufficient.
Heroin is an aggregate weight drug, and the chemist need only have found heroin in any amount, however small, in each bag, as a basis for concluding that the rest of the bags contained heroin. Further, it would have been time consuming but nonetheless possible to test each of the 148 envelopes to see whether they each contained any heroin. Pure weight drugs, however, cannot as readily lend themselves to the process of analysis by extrapolation. Each heroin container need only be tested once. To extrapolate pure weight marihuana, it would, presumably, be necessary to test a sufficient number of samples or particles from within each bag in order to make a finding as to the weight and purity of the particular sample — if it can ever be done — and to then test a large enough number of bags from which to draw conclusions as to the entire mass, all of which must be shown to be pure to the statutory weight level, by extrapolation or otherwise, beyond a reasonable doubt.
Even if extrapolation is a valid procedure to test for pure marihuana — assuming that the Court of Appeals will extend the Argro formulation to pure weight marihuana — this case will simply not admit of it, for it was neither proved nor attempted by the People’s expert, who commendably stated *1017 that he could not, with reasonable scientific certainty, testify as to the weight of the marihuana in the case at bar. If marihuana cannot be quantified, then no amount of extrapolation can change that. The court does not presume to have the scientific knowledge as to whether it is so.
This statutory curiosity was flagged at the earliest time by the commentator who forecast its perplexities, and the implications of change from aggregate to pure weight classification. (See Hechtman, Practice Commentary, McKinney’s Cons Laws of NY, Penal Law, art 221, 1977-78 Pocket Part, pp 54-55.)
An aggregate weight standard has been and would be constitutionally acceptable. (People v Daneff, 30 NY2d 793, supra; People v Cicale, 35 NY2d 661; People v Rosa, 54 AD2d 722; People v Riley, 50 AD2d 823.) But the Legislature converted marihuana to a pure weight standard for ostensibly laudable purposes, and out of the fear that under an aggregate weight analysis people may find themselves charged with and convicted of large scale marihuana sales or possessory crimes when, in reality, the marihuana constituted only a minute percentage of the entity, say, a two-pound brownie. Whether such concerns are realistic is, to be sure, a matter for legislative fact findings through hearings, statistics, and the other types of inquiries which precede enactments. There have indeed been arguments advanced attacking statutes which assign full weight responsibility to those who possess or sell heavily diluted or adulterated compounds. The point was raised in its most eloquent form in the defense brief in People v Cameron (73 Misc 2d 790, 791), upon a claim that it was a denial of due process and equal protection to sustain an aggregate weight statute under which an individual might be convicted of possessing a pound of narcotics simply because he dropped a pinchful of heroin into a full bottle of wine.[4]
These considerations, however, fall into the realm of legislative wisdom, as measured against constitutional limitations. In making the choice that it did, the Legislature has enacted a statute which, in this case, cannot abide prosecution based on possession of more than a pound of marihuana, as *1018 defined.[5] The court, therefore, grants the defendant’s motion to dismiss the possession count under section 221.25 of the Penal Law to the extent that it contemplates possession of more than a pound of marihuana. Because there is evidence from which a jury may lawfully find the defendant guilty beyond a reasonable doubt of mere possession of (any amount of) marihuana under section 221.05 of the Penal Law, a violation, the court will give the count, in that form, to the jury.
SALE
Were it not for the expressly broad provisions by which "sale” is statutorily defined in controlled substance cases (Penal Law, § 220.00, subd 1), the court might be constrained to hold that the pure weight argument applies equally to the count of the indictment by which sale of over a pound is charged (Penal Law, § 221.55).
The sale of marihuana is governed by the following definition (Penal Law, § 220.00, subd 1): " 'Sell’ means to sell, exchange, give or dispose of to another, or to offer or agree to do the same” (emphasis supplied).
A controlled substance sale may, therefore, be committed either by actual sale (in the conventional sense), by delivery, or by offer.
The defendant moves to dismiss the sale count, claiming that one cannot be guilty of selling more than a pound of marihuana because it has not here been (and purportedly cannot be) established that the mass in fact consisted of more than a pound of marihuana as defined. If the argument is correct, it should not result in dismissal, but, at most, reduction to those classes of sales which contemplate no specific weight level (Penal Law, § 221.40, fourth degree sale as a class A misdemeanor and/or Penal Law, § 221.35, fifth degree sale as a class B misdemeanor).
The issue is whether the corpus of the sale is provable *1019 notwithstanding the conceded absence of expert testimony by which the pure weight of the marihuana, within the nine-pound delivery, is proved.
There is evidence upon which a jury may find, if believed, that:
1. The defendant communicated with the informant and told him that he could and would sell him 10 pounds of marihuana. The informant testified as to that, and was subject to cross-examination.
2. A phone conversation between the defendant and the informant took place and, with the consent of the informant, was monitored by the police (People v Gibson, 23 NY2d 618). The tape was played with eminent clarity before the jury, with no claim or objection as to audibility. The receiver of the call, whom the informant attested to be the defendant, indicated that he was prepared to meet the informant in less than an hour on Academy and Montgomery Streets in the City of Poughkeepsie. The informant was heard to say that he would "weigh it” and asked if it was "all bailed up” to which the defendant was heard to reply in the affirmative. When asked whether he wanted "hundreds” the defendant said, "that’s what I want.”
3. An assignation having been arranged, the informant arrived at the appointed hour and street corner with a car, a scale, and a wad of money supplied by the police, who were watching from a nearby location.
4. The defendant personally or with assistance of another, eventually delivered a large box containing transparent plastic bags of what appeared to be marihuana. The informant testified that he weighed several bags in the defendant’s presence, while leaning into the trunk. The sale price was to be $5,000. Money was discussed and presented, when requested by the defendant, but was not passed. The informant, who held himself out as an expert in the marihuana trade, was given a sample by defendant, which he smoked.
Although there were some discrepancies as to the precise sequence of events, there was proof presented from which a jury could reasonably conclude, beyond a reasonable doubt, if they so chose, that these events took place before the police closed in.
5. The box was seized, and it appeared that the vegetable material was packaged in a way which would superficially *1020 camouflage the contents, each bag having been covered with colored coasters.
6. The chemist testified that each of the 20 bags contained marihuana, although he could not state its weight (and, by reason thereof, the possessory count has been dropped down). There was neither testimony nor indication that the bags contained any adulterant.
There is nothing to support a finding, on pure weight grounds, as to the complete identity or composition of the sampled or unsampled mass. We do not know — and apparently cannot know — what it all is, except that it all contains marihuana. This condition defeats the marihuana weight-possession count as charged, for the reasons aforesaid, and because marihuana weight, as defined, in possessory weight crimes, is not established on the basis of the defendant’s representations. But when it comes to the defendant’s offer, the shoe is on the other foot, and the defendant’s own words and assurances should be worth something.
 An offer to sell may be established without production or delivery of the drug itself (People v Jones, 63 AD2d 582). There, the drugs introduced against the defendant were not sufficiently connected to him and were therefore barred from use. The conviction was reversed but the case was remanded for a new trial upon the theory that the People could prove defendant’s guilt on the basis of an offer. It follows that if a sale prosecution based on an offer may be circumstantially sustained with no drugs at all, it may be sustained, a fortiori, where the drugs were seized, produced, and analyzed to contain marihuana, with no proof that it contained anything else. Here, unlike in the possessory requirement, the incompleteness of the analysis would not work against the prosecution, because guilt is, by the statute, posited on the defendant’s own representation and offer, not on the actual purity of the substance as marihuana, as it must be in the possessoryweight count.
On a surface reading it may appear that the Appellate Division remanded the Jones case, authorizing a retrial only on a sale charge which requires no proof of weight, saying (p 582) that "without receipt of these drugs in evidence, a conviction of criminal sale in the first degree could not be sustained inasmuch as the People had to prove that the narcotics which were the subject of the sale weighed in excess of one ounce.” The briefs and record do not support an *1021 interpretation of that language as being out of harmony with the holding at bar. In Jones there was no proof in the record to sustain an offer of any amount greater than a quarter bag. The weight of a quarter bag was not adduced and, being speculative, cannot be said circumstantially or otherwise to have an aggregate weight equivalent to third degree sale. In the case at bar, the jury may find the defendant to have offered 10 pounds. Moreover, the Jones court, in reaching its conclusion, approvingly cited People v Lawson (84 Misc 2d 24), in which a sale prosecution was based on a $25,000 offer to sell a kilo of heroin. The alleged weight there brought it within a first degree sale. The indictment was dismissed, upon a holding that a sale may not be predicated on a naked offer and agreement to sell, with no proof of a specific intent to transfer the drug which is the subject of the offer or agreement.
At bar, we have actual delivery of 9.3 pounds of a substance, accompanied by representations, negotiations, seizure, and analysis which, moreover, at least circumstantially confirms the offer which defendant may be found to have unequivocally made and carried out. Interestingly, the Jones court also approvingly cites People v Goetz (77 Misc 2d 319, 322), in which a naked offer and payment was held to satisfy the sale corpus.
KNOWLEDGE
Regrettably, the sale cases involving offers without delivery or production may not be entirely reconciled, and none deal directly with the issue of whether the defendant must have knowledge of the amount offered in order to meet the statutory weight level. The point is compounded further by the defendant’s argument that he cannot possibly be held to knowledge of the actual weight of marihuana because the chemist himself did not and cannot give the actual weight.
In People v Carelock (58 AD2d 996), the defendant’s conviction for sale of LSD was reversed, where the defendant represented it to be the mescaline and the Judge was held to have erred in telling the jury that it made no difference. The jury should have instead been told that the element of "knowledge” contemplates not only a purposeful sale, but one made with knowledge of the substance. The case at bar can live with the Carelock holding. That case did not discuss sale based on an offer; attempted sale was not considered, and, most impor *1022 tantly, the prosecution, at bar, will have to prove to the jury’s satisfaction that the defendant was aware of the substance, and specifically intended to sell it, while being reasonably able to conclude that he had the capacity to sell marihuana as defined. The Carelock case falls short of holding that "knowledge” includes knowledge of the pure amount within the mixture.
People v Rosenthal (91 Misc 2d 750) rejected the concept of offer and attempted sale where the substance tested out as hay fever medicine. To the extent that it repudiates the prosecution on the theory of an attempt, it is at odds with People v Rosencrants (89 Misc 2d 721), in which an attempted sale theory was upheld when the powder, represented to be methamphetamine, turned out to be nonnarcotic. As the court pointed out in Rosencrants, the impossibility doctrine stood in the way of conviction for sale, but would allow, owing to defendant’s intent, culpability predicated on attempt (Penal Law, §§ 110.00, 110.10). Those cases are instructive, though seemingly conflicting, and deal with impossibility of performance, as based upon chemical analyses which flatly demonstrate impossibility. At bar, we do not have impossibility, we have the actual performance of an offer and delivery, confirmed in every way save that of Herculian analysis.
Lastly, People v Boscia (83 Misc 2d 501) falls midway between Goetz and Lawson by rejecting an offer theory which was bereft of evidence of a present capacity to deliver, and amounting to nothing more than an amorphous future promise.
This court is of the view that while the foregoing cases cannot be completely reconciled, it is possible to harmonize their teachings by basing "sale by offer” upon a foundation which requires a finding that the defendant offered to sell a pound or more of marihuana as defined (People v Goetz, 77 Misc 2d 319, supra) that he specifically intended to do so (People v Lawson, 84 Misc 2d 24, supra), and that he had a reasonable basis to conclude that he could (People v Boscia, supra).
The court does not accept the defendant’s contention that in order to prove the offer corpus, he must be shown to have had actual chemical knowledge of one pound purity as opposed to a reasonable basis on which he could conclude that he had the capacity to sell a pound, as defined.
*1023 CORPUS DELICTI
Legions of cases hold that drugs corpuses may be proved circumstantially, as to nature and amount, despite destruction (People v Reed, 44 NY2d 799; Blanchard v United States, 360 F2d 318), absence (People v Peluso, 29 NY2d 605) or consumption in analysis (United States v Adelman, 107 F2d 497; United States v Haynes, 398 F2d 980, cert den 393 US 1120).
Where the substance is entirely consumed not in the lab but by the user himself, the corpus is not necessarily lost, if it can be established circumstantially, without scientific analysis (People v Kenny, 30 NY2d 154; People v Jackson, 28 NY2d 757).
In People v Pasquarello (282 App Div 405, affd 306 NY 759), the court affirmed a heroin sale conviction for furnishing heroin to an 18-year-old youth. The corpus testimony rested entirely on a description by the youth (the drug was never recovered or produced) — that the substance was heroin, based upon its appearance, taste, and the effects of inhalation. Added to that was the price ($300 an ounce) and the defendant’s representation.
In People v Leonard (8 NY2d 60) it was held that serving rye and ginger to a minor was legally provable without the introduction of the liquor, but upon representations, appearance, and effect.
Federal cases have yielded similar holdings. The witness in Banks v United States (147 F2d 628), a veteran marihuana user for 10 to 12 years, was held to possess the necessary expertise to prove the corpus, absent the drug or lab analysis. (See, also, Ewing v United States, 386 F2d 10, cert den 390 US 991; United States v Tramaglino, 197 F2d 928, cert den 344 US 864; United States v Johnson, 588 F2d 147.)
The general rule is, therefore, that corpus delecti may be established circumstantially in drug cases (Toliver v United States, 224 F2d 742; United States v Rich, 262 F2d 415, 416, cert den sub nom. United States v Galgano, 355 US 883; United States v Nichols, 322 F2d 681, cert den 375 US 967; United States v Atkins, 473 F2d 308, 313, cert den 412 US 931).
SECTION 15.15 OF THE PENAL LAW
Section 15.15 of the Penal Law is pressed upon the court as mandating that when the term "knowingly” appears in a *1024 statute "it is presumed to apply to every element of the offense unless an intent to limit its application clearly appears.” Hence, the argument goes, the defendant must be shown beyond a reasonable doubt to have known the pure weight, because pure weight is an element of the sale crime. The argument fails for two reasons.
To begin with, scientific proof of pure weight is not, in this court’s view, an element of sale by offer. An aggregate weight sale may be proved by offer without any drug produced at all (People v Jones, 63 AD2d 582, supra). Knowledge under section 15.15 of the Penal Law cannot logically compel the introduction of evidence to demonstrate that the defendant had scientific certainty of the drug’s chemical properties. If, for example, a defendant is charged with selling [as the statute has it] pure weight stimulant, and the chemical tests verify it to be so, it can never be shown that the defendant knew the pure weight, unless it be shown that the sale was preceded by his own unimpeachable laboratory test. Similarly, if a defendant sells aggregate heroin in large amounts, which are tested out positively, how may it ever be shown that the defendant actually (i.e., scientifically) knew that the substance truly contained heroin when he sold it? To impose, under section 15.15, a requirement that a drug seller, unaccustomed to traveling with his private chemist, "know” the character of the drug other than circumstantially is implausible enough. To require that a lay defendant scientifically know the drug’s purity as an element of the offer is unimaginable.
Turning the paradigm to this case: were there some way to chemically quantitate marihuana (and to separate leaves from mature stalks, mature stalks from immature ones, plant seeds from seed oil, sterile seeds from fertile seeds, stalk fibers from resin) there would come an hour, whether it be at the end of the chemist’s lifetime or appreciably sooner, when he would, let us suppose, proclaim every speck and particle pure to a weight of over a pound. That being so, the defendant, if his position is correct, would escape liability as a matter of law, on the ground that he cannot possibly be proved beyond a reasonable doubt to have known what it took the chemist days, months, or years to conclude.
The same argument may be made in any drug sale case be it under a pure or aggregate weight statute. Ergo, no drug sale offer whether chemically confirmed or not, would be tenable unless founded upon proof of a presale analysis con *1025 ducted by the defendant, and only then, if flawlessly performed to implant not only a reasonable belief as to the makeup of the drug, but actual chemical knowledge of its botanical components. It remains only then to be argued that the standard had not been met because the defendant’s laboratory test substances were not shown to have been standardized. Section 15.15 cannot be read to endure such exquisite irony.
Accordingly, the motion to dismiss or reduce the first count of the indictment, by which first degree sale is charged, is denied.

. People v Daneff (30 NY2d 793, remittitur amd 31 NY2d 667, rearg den 31 NY2d 709, cert den 410 US 913); United States ex rel. Daneff v Henderson (501 F2d 1180).

. Where "mere traces” of an illicit drug are involved, a different issue may be posed. While not pertinent to this discussion, there are a number of cases which deal with whether possession or sale may be based on "non-usable” amounts of the controlled substance (e.g. People v Pippin, 16 AD2d 635; People v Hicks, 3 AD2d 829; People v Baker, 7 AD2d 707; People v Salerno, 17 Misc 2d 535; Commonwealth v Walker, 226 Pa Super Ct 149; People v Harrington, 396 Mich 33).

. Under section 221.35 of the Penal Law, criminal sale as a class B misdemeanor, the statute criminalizes the sale, inter alia, of "one cigarette containing marihuana.” This is the only appearance of an aggregate weight formulation in any existing *1015 marihuana statute, thus confirming, by contrast, the legislative intent to place the other marihuana crimes on a pure weight basis. The sponsor’s memorandum does not contain any discussiori on the point, nor does it appear to be a point of discussion in the voluminous Assembly debates.

. These arguments were dealt with in Daneff (supra) and its progeny. Furthermore, if a case arises in which the employment of an aggregate weight statute is unconscionable, one might look to arguments that such a statute is unconstitutional, at least as applied. The result could then turn on a case by case basis (cf. People v Carter, 80 Misc 2d 1081; People v Duryea, 82 Misc 2d 1049; see, also, People v Broadie, 37 NY2d 100,119; People v Jones, 39 NY2d 694; [Breitel, Ch. J., dissenting, pp 698-702]).

. This very issue has been plaguing Florida courts, though in the context of who shoulders the burden of proof as to the extent of the presence of excludable matter. The circuits were divided, and on May 18, 1978, the Supreme Court of Florida [Purifoy v State, 359 So 2d 446] held that it is the State’s burden to prove the weight of the contraband matter (i.e. marihuana, excluding, inter alia, mature stalks) under a statute which makes punishable the possession of more than five milligrams of marihuana.